**Scranton Laminated Label, Inc. v. Florimonte**

C.P. of Lackawanna County, No. 10-CV-2325.

*Kevin J. Dempsey*, for plaintiffs.
*Carolyn J. Florimonte*, pro se defendant.

NEALON, *J.*, April 4, 2013—After a jury found defendant liable for wrongful use of civil proceedings against her former employer and awarded $45,000.00 in compensatory and punitive damages, defendant filed a motion for post-trial relief based upon certain evidentiary rulings, allegedly perjurious testimony by her former employer and his counsel, and the proximity of the undersigned's office to the chambers of another judge who dismissed three of defendant's nine other *pro se* lawsuits that have been summarily dismissed by Lackawanna County judges. Defendant contends that the evidentiary rulings and alleged perjury warrant the grant of a new trial,

and that the location of two judicial chambers necessitates the post-trial transfer of this case to another venue.

The evidence introduced at trial was properly limited to matters that were relevant to those claims that defendant asserted in her unsuccessful administrative and civil proceedings, which her employer maintains that she initiated and pursued without probable cause and for an improper purpose. Defendant's allegations of perjury were previously asserted by her at trial and rejected by the jury, and have no support in the trial record. Defendant's claims of bias by another Lackawanna County jurist have twice been repudiated by the Commonwealth Court of Pennsylvania, and any alleged bias by that judge cannot be imputed to another judge based upon the geographic contiguity of their offices. Consequently, defendant's motion for post-trial relief will be denied.

## I. FACTUAL BACKGROUND

Plaintiff Edmund J. Carr ("Carr") is the owner and operator of plaintiff Scranton Laminated Label, Inc. ("Scranton Label"), which has manufactured and sold pressure-sensitive labels to industrial clients since 1969. (Transcript of proceedings ("T.P.") on 11/26/12, pp. 72-73, 87). Scranton Label currently employs twenty-seven full-time employees and seven part-time employees, and twenty of those employees have worked for Scranton Label for more than twenty years. (*Id.* at pp. 73-74). Defendant Carolyn J. Florimonte ("Florimonte") was originally employed as a customer service representative with Scranton Label from November 1990 to January 1996. (Docket entry no. 43 at p.4). Following an almost four year hiatus, she resumed employment with Scranton

Label on August 16, 1999, and remained employed there until her discharge on April 18, 2003. (T.P. 11/27/12 at pp. 14-15,87, 196; T.P. 11/28/12 at p. 34; Plaintiffs exhibit no. 2).

Although Scranton Label's work force is compromised entirely of at-will employees, Florimonte presented an employment contract to Carr within two weeks of resuming her employment in August 1999. (T.P. 11/26/12 at pp. 80-81; T.P. 11/27/12 at pp. 36-38). Carr declined to sign Florimonte's proposed contract since it stated "that if [Carr] ever fired [Florimonte], [Carr] would have to pay her, up until the time she was 65 years old, the amount that she was making at that time." (T.P. 11/26/12 at p. 81). While other Scranton Label sales personnel had individual sales which exceeded $1,000,000.00 per year, Florimonte's sales were consistently only $130,000.00/year and "weren't enough to sustain her expenses." (*Id.* at pp. 86-87). Despite the fact that Florimonte "was always arguing [and] always combative with people," (*Id.* at p. 83), Carr "always had hope that someday somehow she was going to get on board with what we were doing and be able to sell like" the other Scranton Label sales staff. (*Id.* at 88).

Current and former employees of Scranton Label described Florimonte as a belligerent and confrontational co-worker who frequently engaged in aberrant behavior. Scranton Label's general manager, John DeLeo, characterized Florimonte as a "difficult person" who "fought everybody along the way, including customers." (T.P. 11/27/12 at pp. 147-148). An ex-customer representative at Scranton Label, Karen J. Doyle, stated that Florimonte's "very strange" conduct included "talking

out loud to [her]self," "being rude" with customers, and interrupting Ms. Doyle while she was speaking on the phone with customers. (T.P. 11/26/12 at pp. 55, 66, 68-69). Ms. Doyle indicated that Florimonte was an incessant complainer who even criticized Carr for having Scranton Label's sidewalks shoveled, rather than heated, during inclement weather. (*Id.* at p. 49).

According to a former Scranton Label secretary, Amy Ayers, Florimonte "was always watching what everybody else was doing," and "would always correct you...even if it wasn't in her department." (T.P. 11/27/12 at p. 108). Florimonte also reportedly had a habit of "always talking about other people" to their fellow employees. (*Id.* at p. 116). Scranton Label's general manager indicated that "other employees of Scranton Label would shy away from [Florimonte] because she would talk down to them [and] embarrass them on a daily basis." (*Id.* at p. 150).

In the spring of 2003, Florimonte developed a subjective belief that Carr and her co-workers had installed surveillance devices in her company car and at her work station. On April 11, 2003, Florimonte hand-delivered a letter dated April 10, 2003, to Carr's office as she departed for a one week vacation. (T.P. 11/26/12 at pp. 89-90; T.P. 11/27/12 at pp. 10, 172-173; T.P. 11/28/12 at p. 25). Florimonte's letter to Carr opened by stating that "I would like you to remove the listening devices from my car... [a]nd since you are so anxious to know my every movement and innermost thoughts, I thought I would share them with you." (Plaintiffs' exhibit no. 1 at p.1; T.P. 11/26/12 at p. 90; T.P. 11/27/12 at p. 80). The remainder of her two page, singled-spaced letter contained criticisms and accusations regarding other Scranton Label

employees, including Carr's own son. (Plaintiffs' exhibit no. 1 at pp. 1-2; T.P. 11/26/12 at pp. 91-99; T.P. 11/27/12 at pp. 172-173). Florimonte's correspondence concluded by stating "[i]f you want to fire me, do it," but "[i]f I stay, I'd appreciate more vacation time and a serious increase in salary and your assurance that this nonsense is over." (Plaintiffs' exhibit no. 1 at p. 2).

Upon reviewing Florimonte's letter, Carr contacted Florimonte to arrange for a surveillance expert to inspect her company vehicle for listening devices, even though he considered her allegations "ludicrous" and "offensive." (T.P. 11/27/12 at pp. 11-12, 24-25, 175). Carr instructed Florimonte to secure the vehicle so that it could be inspected by a retired state trooper and Lackawanna County detective, Walter Carlson, who specialized in surveillance investigation. (*Id.* at pp. 12-13, 121-122). Florimonte has admitted that Mr. Carlson inspected the vehicle in her presence, but did not discover any listening devices or surveillance equipment. (*Id.* at pp. 13, 175-176). When Florimonte showed Mr. Carlson what she suspected was a recording apparatus, he demonstrated to her that it was the factory installed, remote control mechanism for adjusting the driver's seat. (*Id.* at pp. 11, 13, 122-123, 176; T.P. 11/28/12 at pp. 44-45).

At Florimonte's insistence, the vehicle was also inspected by another surveillance expert who was hired by Florimonte. (T.P. 11/27/12 at p. 176). Florimonte has conceded under oath that her own surveillance expert likewise failed to discover any listening or surveillance device in the vehicle. (*Id.* at pp. 177, 181, 194-195). As for Florimonte's allegations concerning electronic eavesdropping at her work station, "Carr invited Ms.

Florimonte to come to the office and point out where the cameras and listening devices in the ceiling [allegedly] were, but she declined that offer." (*Id.* at p. 126). Florimonte has also admitted under oath that no individual has ever corroborated her subjective claim regarding the existence of surveillance equipment in her company vehicle or at her work station. (T.P. 11/27/12 at pp. 186, 194-195).

Based upon Florimonte's "bizarre behavior" and the contents of her letter dated April 10, 2003, and after two surveillance experts had independently concluded that there was no evidence of recording equipment in Florimonte's company vehicle, Carr "decided that [Florimonte] would have to be terminated" since "[i]t would no longer be a good environment for anybody" at Scranton Label if she remained employed there. (T.P. 11/27/12 at pp. 13-14). In light of the scathing allegations that Florimonte had made in her letter regarding several long-term employees and managers of Scranton Label, Carr concluded "that it would just not make any sense for me to keep her because there would be animosity every day." (*Id.* at p. 15). On April 18, 2003, Carr delivered a letter to Florimonte advising her that she was discharged as of Friday, April 18, 2003.[1] (*Id.* at pp. 14-15, 142-143; Plaintiffs' exhibit no. 2).

Following her termination, Florimonte filed a claim for unemployment compensation benefits, which claim Scranton Label opposed on the ground that she had been discharged for cause. (*Id.* at pp. 15-17, 120-121). During the unemployment compensation hearing on June 10, 2003, Florimonte continued to assert that Carr, his "son,

---

1. Florimonte's replacement generated $750,000.00 in annual sales within two years of the start of he employment. (*Id.* at p. 101).

and a number of other employees at Scranton Label had all conspired to put listening devices in her business car and to put listening and camera devices in the ceiling of the business to watch what [she] was doing." (*Id.* at p. 121). Florimonte testified, however, that neither of the two surveillance experts who examined her company vehicle found any proof of any monitoring devices. (*Id.* at pp. 125, 127). Other witnesses testified "at the hearing that there were no listening devices found in the ceiling" of Scranton Label. (*Id.* at p. 126). In fact, Florimonte did not produce a single witness to support her surveillance allegations against Carr and Scranton Label. (*Id.* at p. 184).

Carr's counsel at the unemployment compensation hearing stated that once it became apparent towards the conclusion of the hearing "that the ruling was going to be adverse to [Florimonte]," she became "very hostile" and exclaimed to Carr "that this is not over." (*Id.* at pp. 127, 129-130). In his decision dated June 17, 2003, Referee Walter Alexandroff made the following factual findings:

\*\*\*\*

5. [Florimonte] made allegations against the employer, specifically, she accused the employer of putting listening devices in her car and surveillance equipment in the ceilings to observe her when she was at her desk in the office.

6. The employer did not put listening devices in [Florimonte's] car, nor did they (sic) plant listening and surveillance devices in the ceiling to spy on her.

7. The employer, immediately after receiving notice of

the allegations, had an independent investigator check out [Florimonte's] automobile. That investigation revealed there were no listening devices.

8. [Florimonte] was advised that, if she wished to get a second, independent evaluation, she should do so.

9. [Florimonte] had the vehicle in question under her surveillance and, after obtaining her own personal evaluator, was advised that there were no listening devices in the vehicle.

10. The employer offered to allow [Florimonte] to come into the office and point out where she believed devices were concealed in the ceiling to spy on her. [Florimonte] declined the offer.

11. The employer terminated [Florimonte] because she persisted in her allegations.

(Plaintiffs' exhibit no. 4 at p. 1). Noting that an employee is "ineligible for [unemployment] compensation for any week in which [her] unemployment is due to [her] discharge...from work for willful misconduct connected with [her] work," Referee Alexandroff held that Florimonte was "disqualified" from receiving unemployment compensation benefits since her actions were "so inimical to the employer's best interests that discharge was a natural result." (*Id.* at p. 2; T.P. 11/27/12 at pp. 130-131, 183-184).

Because Florimonte subjectively believed that the witnesses who testified against her had "committed felonies" and perjured themselves, she appealed the unemployment compensation determination to the Unemployment

Compensation Board of Review. (T.P. 11/27/12 at pp. 185-186, 194-195). On August 20, 2003, the Unemployment Compensation Board of Review unanimously affirmed Referee Alexandroff's decision. (*Id.* at pp. 16-17, 131-132; Plaintiffs' exhibit no. 5). Florimonte then terminated her counsel and filed a pro se appeal of the unemployment compensation denial to the Commonwealth Court of Pennsylvania. (*Id.* at pp. 132, 186). On March 16, 2004, the Commonwealth Court affirmed the Unemployment Compensation Board of Review, and held:

> Here, the Board ultimately found that [Florimonte] was terminated because she persisted in making false allegations against her Employer. On April 10, 2003, [Florimonte] sent Employer a letter accusing Employer and her co-workers of conspiring to spy on her by installing surveillance equipment in her car and office. Edmund Carr, the owner, testified that upon receiving the letter, he immediately hired an investigator to examine her vehicle. The investigator examined [Florimonte's] car on April 11, 2003, and found no evidence to support [Florimonte's] allegations. [Florimonte] was dissatisfied with the investigation and hired her own investigator, who also found no evidence of listening devices in the car. With regard to the claims of surveillance in her office, Carr testified that there were no cameras or listening devices in her office. Carr offered to allow [Florimonte] to come in to the office and point out where she believed surveillance devices were concealed, but [Florimonte] declined.

> Despite the results of the investigation, [Florimonte] never retracted her allegations and continued to make

unfounded accusations that Employer was monitoring her actions through surveillance. [Footnote omitted]. Although [Florimonte] attempted to justify her conduct, [Florimonte] offered no evidence to support her allegations other than her subjective belief that her co-workers were eavesdropping on her. (Notes to Testimony (N. T.) at 31)....Based upon our review of the record, the Board's findings are supported by substantial evidence and support the conclusion that [Florimonte] had acted in disregard of a standard of behavior which her Employer could rightfully expect.

(Plaintiffs' exhibit no.6 at pp. 6-7; T.P. 11/27/12, pp. 17, 132-133, 186).

While Florimonte's unemployment compensation appeal was pending, she also filed a discrimination claim against Scranton Label with the Pennsylvania Human Relations Commission ("PHRC"). (T.P. 11/27/12 at pp. 17, 186-187). Florimonte asserted before the PHRC that Carr and Scranton Label had conducted surveillance of her based upon her gender. (Plaintiffs' exhibit no. 9, count 1 "sex discrimination" harassment and count 2 "sex discrimination" discharge). On April 20, 2006, the PHRC advised Florimonte that it had completed its investigation of her "complaint of discrimination and found that the evidence is not sufficient to show an unlawful act of discrimination occurred." (*Id.* at p. 1).

In count 1 of its "findings of the investigation," the PHRC outlined its findings relative to Florimonte's allegation that Carr "conducted surveillance on her due to her sex/female." (*Id.* at ¶¶ 2, 6.1-6.7 on pp. 4-6 of 11). In addition to concluding that its "investigation did not

uncover evidence of harassment," (*Id.* at ¶ 3.2 on p. 5 of 11), the PHRC determined that Scranton Label had a "sufficient and adequate" anti-harassment policy in place since April 24, 1995, and that the policy was properly disseminated to employees and followed in the case of Florimonte's discharge. (*Id.* at ¶¶ 8-16 on pp. 6-7 of 11). The PHRC also addressed Florimonte's contention in count 2 that Scranton Label's male sales manager was treated more favorably than she, and found that Florimonte was fired for legitimate, non-discriminatory reasons since her allegation that Carr "was spying on her through electronic surveillance... was proved untrue," but she "continued to insist it was true and [Carr] considered her behavior not in the best interest of the business." (*Id.* at p. 11 of 11). As a result, the PHRC issued findings of "no probable cause" in count 1 and count 2. (*Id.* at pp. 7, 11 of 11; T. P. 11/27/12 at pp. 189-190).

On March 6, 2008, Florimonte commenced a civil suit against Carr and Scranton Label asserting gender discrimination, retaliatory discharge and hostile working environment in violation of federal and state law. (Plaintiffs' exhibit no. 10 at p. 1). Florimonte has acknowledged under oath that her civil lawsuit "alleged essentially the same matters" that she had asserted in her unemployment compensation claim and her PHRC complaint. (T.P. 11/27/12 at p. 191). During her trial testimony in that civil case, Florimonte confirmed that her discrimination and harassment claims were predicated upon her allegations that Carr and her co-workers had conducted surveillance of her. (Plaintiffs' exhibit no. 10 at pp. 10-12). On March 15, 2010, a non-jury verdict was entered in favor of Carr and Scranton Label and against Florimonte in that gender

discrimination, retaliatory discharge and hostile working environment litigation. (*Id.* at p. 24; T.P. 11/27/12 at pp. 18-23). No post-trial motion was ever filed in that non-jury proceeding.

On April 5, 2010, Carr and Scranton Label instituted the above-captioned matter against Florimonte seeking compensatory and punitive damages for wrongful use of civil proceedings. (Docket entry no. 1). Carr and Scranton Label maintain that Florimonte filed "meritless" and "baseless" unemployment compensation claims and appeals, PHRC complaints, and civil suits against them without probable cause and in a grossly negligent manner, as a result of which they incurred counsel fees and litigation expenses, and suffered pecuniary losses, emotional distress, and harm to their reputations. (*Id.* at ¶¶ 5, 10-37, exhibits A-B). After Carr and Scranton Label filed a certificate of readiness on June 22, 2012, and a status conference was conducted on August 9, 2012, this matter was scheduled for a jury trial on November 26, 2012. (*Id.* at nos. 28-29).

In anticipation of trial, and in light of the fact that Florimonte's unemployment compensation, PHRC and civil lawsuit claims concerned her second period of employment from August 16, 1999 to April 18, 2003, Carr and Scranton Label filed a motion in limine seeking to preclude any evidence pertaining to Florimonte's first term of employment from November 1990 to January 1996. (*Id.* at No. 30). Carr and Scranton Label also sought to bar any evidence of alleged racist remarks that Florimonte attributed to a Scranton Label principal during her discovery deposition. (*Id.* at ¶¶ 13-19). Since Florimonte and the Scranton Label managers and employees are all

Caucasian, and Florimonte's unsuccessful administrative and court claims related solely to gender discrimination, retaliatory discharge and hostile work environment based upon purported surveillance, Carr and Scranton Label argued that any race-related allegations were irrelevant and unduly prejudicial. (*Id.* at ¶¶ 20-24). Additionally, Carr and Scranton Label sought to preclude evidence of Florimonte's successful workers' compensation claim for work-related carpal tunnel syndrome, or any testimony by Florimonte concerning statements purportedly made by her surveillance expert. (*Id.* at ¶¶ 25-34).

Oral argument on the motion in limine was conducted on November 16, 2012, at which time Carr and Scranton Label contended that any evidence related to Florimonte's first term of employment, the alleged racist comments, or her workers' compensation claim was irrelevant since none of those matters served as a basis for Florimonte's unemployment compensation claim, PHRC complaint or civil lawsuit. (T.P. 11/16/12 at pp. 14-18, 41-44). With regard to any hearsay testimony by Florimonte pertaining to statements allegedly made by her own surveillance expert, Florimonte was advised that her expert could testify and opine regarding his findings, and that she could testify as to what she personally observed him do during his inspection.[1] (*Id.* at pp. 44-49). However, Florimonte was cautioned that she would not be permitted to "testify as to [her] interpretation of what his testing did or did not show," since that involved specialized knowledge that was

---

1. Florimonte produced an "Investigative Specialist Contract" and receipt dated April 17, 2003, indicating that she retained A-Plus Investigations, Inc., 95 Connecticut Drive, Burlington, New Jersey, to perform an "electronic sweep of vehicle" for $850.00. (Docket entry no. 34, exhibit A at pp. 1-3).

beyond the common understanding of a layperson. (*Id.* at pp. 48-49). Furthermore, after the apparent irrelevancy of any evidence relating to her first term of employment and the alleged racist remarks was explained to Florimonte in great detail, (*Id.* at pp. 26-40), she was granted leave of court to provide proof of its proffered relevancy by November 20, 2012. (*Id.* at p. 41).

On November 21, 2012, the motion in limine filed by Carr and Scranton Label was granted in part and denied in part. Carr and Scranton Label asserted that Florimonte was chargeable with wrongful use of civil proceedings since she unsuccessfully pursued administrative and civil claims against them without probable cause and for an improper purpose. (Docket entry no. 43 at p. 6 (citing *Sabella v. Estate of Milides*, 992 A.2d 180, 188 (Pa. Super. 2010), *app. denied*, 608 Pa. 642, 9 A.3d 631 (2010)). Besides Scranton Label's adoption of a "harassment-free work environment policy statement" on April 24, 1995, nothing relative to Florimonte's first period of employment from November 1990 to January 1996 was referenced in her unsuccessful administrative and civil actions. Nor were any purported racist remarks at issue in any of those proceedings. Hence, with the exception of Scranton Label's publication of a "harassment-free work environment policy statement" on April 24, 1995, Florimonte was barred from introducing evidence related to her first term of employment or the alleged racist comments supposedly made by Scranton Label personnel. (*Id.* at pp. 8-10).

The gist of the tort claim that was "advanced by Scranton Label and Carr [wa]s that Florimonte repeatedly initiated and pursued frivolous claims against them." (*Id.* at p. 9). Since Florimonte's "successful prosecution

of a workers' compensation claim arguably makes that contention less probable by suggesting that she was not a serial tormentor," the motion in limine seeking to bar evidence of her successful workers' compensation claim was denied. (*Id.*). As for any evidence pertaining to the vehicle inspection by A-Plus Investigations, Inc., we held:

> ...Florimonte may testify as to what she personally observed when she witnessed her investigator inspect the Scranton Label vehicle for listening devices and surveillance equipment. Any such testimony will be based upon her perception of that individual and is not premised upon scientific, technical or specialized knowledge. See Pa.R.E. 701. However, Florimonte will not be permitted to offer testimony regarding the investigator's results of his inspection since any such testimony would constitute hearsay and require scientific, technical or other specialized knowledge. Needless to say, the inspector himself may testify with respect to his findings provided that his expert qualifications are duly established under Pa.R.E. 702.

(*Id.*)[2]

---

2. After Carr and Scranton Label filed their motion in limine, Florimonte filed a "motion in limine to suspend lawsuit" and requested a postponement of the trial "until such time as the office of the District Attorney of Lackawanna County has completed its interaction with [Florimonte] regarding suspected perjury by plaintiff Edmund Carr." (Docket entry no. 32 at p. 1). In her motion, Florimonte alleged that she had been unsuccessful with her administrative and litigation claims due to "fabrications" by Carr, and that a continuance was necessary since she was in "continuing contact" with the district attorney's office which was still investigating the matter. (*Id.* at ¶¶ 5, 10, 15-16). However, upon being contacted about Florimonte's perjury accusations, the district attorney's office forwarded an email to the undersigned stating that it had "reviewed the material submitted and determined the matter lacked merit and the matter was closed; no further action will be taken in the

518

During the jury trial, Carr testified concerning the pecuniary losses that he and Scranton Label suffered in defending Florimonte's administrative claims and lawsuit, (T.P. 11/27/12 at pp. 18-22), the legal fees of $24,094.03 that they incurred in opposing those matters, (*Id.* at pp. 23-24, 133-134, plaintiffs' exhibit no. 3), and the stress, embarrassment and anxiety that Carr suffered as a result of Florimonte's unfounded allegations. (*Id.* at pp. 25-29). Carr testified that he filed the wrongful use of civil proceedings case against Florimonte because she "went after me three times," and continues to make frivolous surveillance charges against him. (*Id.* at p. 129). Carr testified that "even though this [case] cost [him] more money, [he] felt strongly enough that this has got to stop" because he "can't take it anymore." (*Id.*).

Although Florimonte indicated in the parties' joint pre-trial order that she would call her former attorneys as witnesses at trial, (Docket entry no. 36, section 4), she did not offer their testimony. Nor did she call her surveillance expert from A-Plus Investigations, Inc. as a witness. Instead, she merely presented her own testimony in support of her subjective belief that Carr and Scranton Label had installed listening devices in her company car and at her work station. (T.P. 11/20/12 at pp. 5-12, 17-26, 30-31). Florimonte concluded her direct testimony by declaring that "I still to this day have not recanted that I believe in the surveillance, and I leave it to you to decide if I'm crazy." (*Id.* at p. 26).

Over the objection of counsel for Carr and Scranton Label based upon Florimonte's failure to call her former

case." (T.P.11/16/12 at p. 5). As a result, Florimonte's motion seeking to suspend the lawsuit was denied. (*Id.* at pp. 7-8).

counsel as witnesses, (*Id.* at pp. 57-58), the jury was instructed that Florimonte possessed probable cause for initiating or continuing her administrative and civil proceedings "if she reasonably believed in the existence of the facts upon which the claim was based and... reasonably believed that under those facts the claim may have been valid, in reliance upon the advice of a lawyer which had been sought in good faith and given after full disclosure of all relevant facts within her knowledge and information." (*Id.* at p. 66). On November 28, 2012, the jury returned a verdict finding that Florimonte "acted in a grossly negligent manner or without probable cause, and primarily for a purpose other than that of securing the proper adjudication of her claims, when she initiated or continued civil proceedings against" Carr and Scranton Label. (*Id.* at p. 109). In response to special damage interrogatories, the jury awarded Carr and Scranton Label $24,904.03 for reasonable counsel fees and expenses incurred in defending those claims, zero damages for harm to their reputations, $2,500.00 for emotional distress and mental anguish suffered by Carr, and $10,000.00 for pecuniary losses sustained by Carr and Scranton Label. (*Id.* at pp. 109-110). The jury also found that Florimonte's conduct "in wrongfully initiating or continuing civil proceedings was outrageous," and thereby awarded $7,595.97 in punitive damages. (*Id.* at p. 110). Thus, the compensatory and punitive damages awards totaled $45,000.00. (*Id.* at pp. 10-11).

On November 30, 2012, Florimonte filed a notice of appeal of the interlocutory, pre-trial evidentiary ruling of November 21, 2012. (Docket entry no. 46). On December 7, 2012, Florimonte also filed a "motion for post-trial relief"

comprised of a "motion for a new trial" and a "motion for a change of venue." Following transcription of the trial record and the parties' submission of their memoranda of law, oral argument on Florimonte's post-trial motion was conducted on February 28, 2013. (*Id.*, at nos. 52, 55, 58). Florimonte's motion for post-trial relief is now ripe for disposition.

## II. DISCUSSION

### (A) STANDARD OF REVIEW

When considering a request for a new trial under Pa.R.C.P. 227.1(a)(1), the trial court must undertake a two-step process. *See Harman v. Borah*, 562 Pa. 455, 467, 756 A.2d 1116, 1122 (2000). First, the trial court must decide whether one or more mistakes occurred at trial. *Huber v. Etkin*, 58 A.3d 772, 776 (Pa. Super. 2012); *Hodin v. Frekey*, 2011 WL 2552474, at *5 (Lacka. Co. 2011). Second, if the trial court concludes that a mistake occurred, it must determine whether the mistake was a sufficient basis for granting a new trial. *Lockley v. CSX Transportation, Inc.*, 5 A.3d 383, 388 (Pa. Super. 2010), *app. denied*, 613 Pa. 668, 34 A.3d 831 (2011). Since the harmless error doctrine underlies every decision to grant or deny a new trial, *Huber*, *supra*, "[a] new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake." *Bennett v. A. T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 149-150 (Pa. Super. 2012) (quoting *Harman, supra*).

### (B) EVIDENTIARY RULINGS

Florimonte seeks a new trial based upon the pre-trial rulings made with respect to the motion in limine that was filed by Carr and Scranton Label. Florimonte contends in her post-trial motion that "[t]he jury was not permitted to learn of the racism to which [s]he was subjected," "to learn that the anti-harassment policy of 1995 was actually generated by [her] complaint of sexual harassment in the same year," "to see any additional evidence (splints, photos of hands) in addition to the favorable verdict for [Florimonte] regarding carpal tunnel and workman's compensation," or to "hear any testimony of what [she] observed...during the scan of her business car." (Docket entry no. 50 at p. 1). In her post-trial brief, Florimonte escalates her argument further and alleges that the exclusion of evidence regarding disputed racist remarks "denied [Florimonte] her substantive and federally protected rights under the Hate Crimes Act of 1969." (Docket entry no. 55 at p. 7).

Questions concerning the admission and exclusion of evidence are within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Keffer v. Bob Nolan's Auto Service, Inc.*, 59 A.3d 621, 631 (Pa. Super. 2012). Admissibility depends on relevance and probative value. *Com. v. Chmiel*, 612 Pa. 333, 412, 30 A.3d 1111, 1157 (2011); *Smith v. Morrison*, 47 A.3d 131, 137 (Pa. Super. 2012), *app. denied*, 57 A.3d 71 (Pa. 2012). "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." *Com. v. Williams*, 58 A.3d 796, 800 (Pa. Super. 2012). However, even relevant evidence may be excluded if its probative

value is outweighed by the potential of unfair prejudice. *Smith, supra.* Unfair prejudice "means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty from weighing the evidence impartially." *Com. v. Kouma*, 53 A.3d 760, 770 (Pa. Super. 2012); *Smith, supra.*

To succeed with their claim for wrongful use of civil proceedings under the Dragonetti Act, Carr and Scranton Label were required to prove that Florimonte unsuccessfully litigated civil proceedings against them in a grossly negligent manner or without probable cause, and primarily for a purpose other than that of securing the proper adjudication of her claims. *Betts Industries, Inc. v. Heelan*, 33 A.3d 1262, 1265 (Pa. Super. 2011) (citing 42 Pa.C.S. § 8351). As a consequence, only matters that were pertinent to the underlying unemployment compensation proceedings, PHRC complaint and civil lawsuit were relevant to the claim for wrongful use of civil proceedings. Any evidence which did not serve as a basis for Florimonte's fruitless administrative and civil claims was not relevant to the issues of whether she had probable cause to initiate those proceedings or pursued them for an improper purpose.

With regard to Florimonte's attempt to present evidence of alleged racist statements, which allegations Carr and Scranton Label vehemently deny, the records of the unemployment compensation proceedings, PHRC review and civil case reflect that charges of racism were not at issue in those matters. Florimonte's unemployment compensation arguments before Referee Alexandroff, the Unemployment Compensation Board of Review, and

the Commonwealth Court of Pennsylvania related solely to her persistent surveillance allegations. (Plaintiffs' exhibit nos. 4, 5, 6). The PHRC investigation concerned Florimonte's charges of "Sex Discrimination" Harassment and "sex discrimination" discharge. (Plaintiffs' exhibit no. 9). Her claims of gender discrimination, retaliatory discharge and hostile working environment set forth in her civil lawsuit were premised upon her contentions that Carr and her fellow employees had conspired to install electronic eavesdropping devices in her company car and at her work station. (Plaintiffs' exhibit no. 10 at pp. 10-12). Since Florimonte's unsuccessful administrative and litigation claims did not implicate allegations of racism, any such evidence was not relevant to the issues of whether she pursued those claims without probable cause and for an improper purpose.

The motion in limine that was submitted by Carr and Scranton Label sought to exclude any reference to Florimonte's first tenure of employment from November 1990 to January 1996. Although allegations of surveillance, discrimination or other wrongdoing during Florimonte's first term of employment did not serve as grounds for any claims that she asserted in the unemployment compensation proceedings, PHRC review and civil lawsuit, Scranton Label's anti-harassment policy that it implemented on April 24, 1995, was referenced in the PHRC findings and the non-jury verdict. (Plaintiffs' exhibit no. 9 at ¶¶ 8-13 on p. 6 of 11; plaintiffs' exhibit no. 10 at pp. 2-3). Therefore, over the objection of Carr and Scranton Label, Florimonte was permitted to introduce evidence of that policy statement at the time of trial. (T.P. 11/27/12 at pp.

78-79; defendant's exhibit no. 9).

With the exception of the "harassment-free work environment" policy dated April 24, 1995, any evidence pertaining to Florimonte's first period of employment was irrelevant to the unemployment compensation, PHRC and civil proceedings which Carr and Scranton Label asserted that Florimonte wrongfully used. Florimonte's contention that the policy was adopted based upon her 1995 complaint to Scranton Label management was not material to the Dragonetti Act issues before the jury. Moreover, Carr and Scranton Label witnesses were similarly barred from attempting to offer proof of Florimonte's misconduct during her first term of employment. (T.P. 11/26/12 at p. 79; T.P. 11/27/12 at p. 150). Notwithstanding that fact, Florimonte contends in her post-trial submissions that Carr and Scranton Label were permitted to "crucify her" by referencing "untrue information from the first employment." (Docket entry no. 55 at p. 6). The trial record belies that allegation.

After Florimonte voluntarily discontinued her first period of employment in January 1996, she did not file any unemployment compensation claim, PHRC complaint or other civil proceeding against Carr or Scranton Label relative to her employment from November 1990 to January 1996. By the time that Florimonte filed her first claim against Carr and Scranton Label in the late Spring of 2003, any theoretical claims that she may have advanced for wrongful discharge or employment discrimination were time-barred by the applicable statutes of limitations. *See Mandel v. M & Q Packaging Corp.,* 706 F.3d 157, 165 (3d Cir. 2013) (to bring a suit for gender-based

discrimination and sexual harassment in violation of Title VII of the Civil Rights Act of 1964, a claimant must first file a complaint with the Equal Employment Opportunity Commission within 300 days of the alleged unlawful employment practice); *Burgh v. Borough Council of Borough of Montrose,* 251 F.3d 465, 471 (3d Cir. 2001) (employment discrimination claim brought under the Pennsylvania Human Relations Act must be filed within two years after notice from the PHRC that it is closing the complaint); *Gates v. Servicemaster Commercial Service,* 428 Pa. Super. 568, 572-573, 631 A.2d 677, 679 (1993) (wrongful discharge is a tort action subject to two-year statute of limitations), *app. denied,* 537 Pa. 610, 641 A.2d 310 (1994). Thus, any conceivable causes of action related to Florimonte's first tenure of employment were foreclosed by the governing limitations periods as of the time that she resumed employment at Scranton Label on August 16, 1999. As such, other than the "harassment-free work environment" policy adopted on April 24, 1995, nothing pertaining to her first period of employment was relevant in this case.

Florimonte's successful litigation of a post-discharge workers' compensation claim against Scranton Label had marginal relevance, and to the extent that the motion in limine sought to preclude evidence of Florimonte's 2004 workers' compensation claim, it was denied. Florimonte was permitted to introduce evidence that following her discharge on April 18, 2003, she prevailed in her pursuit of a workers' compensation claim against Scranton Label for payment of her medical expenses associated with carpal tunnel surgery. (T.P. 11/27/12 at pp. 87-92, 200-

202). Carr testified that the decision to accept or contest Florimonte's workers' compensation claim was made by Scranton Label's workers' compensation insurer, rather than Carr or Scranton Label. (T.P. 11/28/12 at pp. 50-52). Florimonte also attempted to admit into evidence the wrist splint that she wore for her carpal tunnel syndrome and the photographs that were taken of her wrist following the carpal tunnel surgery. (T.P. 11/27/12 at pp. 92-94, 99). Those items were clearly irrelevant to the Dragonetti Act claim being considered by the jury, and were properly excluded since they had no probative value.

Florimonte's final evidentiary challenge concerns the ruling which permitted her to testify under Pa.R.E. 701 regarding her personal observations of her surveillance expert's movements and actions during his vehicle inspection. Consistent with the pre-trial ruling in *Scranton Laminated Label, Inc. v. Florimonte*, 2012 WL 5903798 (Lacka. Co. Nov. 21, 2012), Florimonte was not permitted to express a lay opinion containing her subjective interpretation of what the investigator's electronic equipment allegedly revealed. (T.P. 11/27/12 at pp. 177-181). Florimonte avers that she is entitled to a new trial because she was "prevented from stating that the equipment was still and then reacted when the passenger door was opened, for about ten seconds and then went still again." (Docket entry no. 55 at p. 9).

Florimonte has consistently admitted under oath that the individual that she retained from A-Plus Investigations, Inc., concluded that there were no listening devices in her company vehicle. (T.P. 11/27/12 at pp. 177, 181, 194-95). Florimonte was free to call her surveillance expert

as a witness to testify that some form of an electric meter allegedly "reacted" when the passenger door was opened, and to explain the significance, if any, of that purported movement. For whatever reason, she chose not to present his expert testimony. Florimonte simply did not possess the requisite scientific or technical knowledge, skill or experience to testify on that subject. As a result, it was not an abuse of discretion to limit her testimony accordingly.

## (C) ALLEGED PERJURY

Throughout the trial, Florimonte asserted that those witnesses who testified against her, particularly Carr and his unemployment compensation hearing counsel, repeatedly perjured themselves. (T.P. 11/27/12 at pp. 194-195; T.P. 11/28/12 at p. 28). It was within the exclusive province of the jury to assess the credibility of the witnesses and to weigh the evidence presented. *See Wright v. Eastman*, 2013 WL 221493, at *10 (Pa. Super. 2013). Since credibility determinations are within the jury's realm, the authority of the trial judge to disturb a verdict based upon a weight of the credible evidence claim is narrowly circumscribed. *Renna v. Schadt*, 2013 WL 657655, at *10 (Pa. Super. 2013).

In her post trial motion, Florimonte again charges Carr and his testifying counsel with "a number of perjuries," which she contends demonstrates "a pattern and in turn, establish[es] intent to obstruct justice by Plaintiffs." (Docket entry no. 50 at ¶¶ 18, 21). Florimonte's persistent allegations of perjury were considered and rejected by the jury, as evidenced by its verdict awarding compensatory and punitive damages to Carr and Scranton Label. Her

post-trial charges of perjury lack any support in the record and do not justify setting aside the jury's verdict via a grant of a new trial. *See Berger v. Schetman*, 883 A.2d 631, 637-640 (Pa. Super. 2005).

## (D) MOTION FOR CHANGE OF VENUE

Labeled as a "motion for a change of venue," Florimonte's alternative request for post-trial relief seeks to transfer this case "away from the bench of the civil court of Lackawanna County." (Docket entry no. 50 at p.5). Florimonte contends that "[o]n January 17, 2012, [Florimonte] wrote to the Court Administrator of Pennsylvania, Zygmont Pines, Esquire, requesting a change of venue for her proceedings in another matter regarding the perceived bias by [Lackawanna County] Judge Robert Mazzoni." (*Id.* at ¶25). Florimonte alleges that "[h]ad [Florimonte] been aware that Judge Robert Mazzoni's chambers and courtroom are directly across the hall from the Judge in this trial, she would have again requested a change of venue for this lawsuit." (*Id.* at ¶26). Florimonte claims that "[t]he close proximity of Judge Mazzoni to Judge Nealon, causes [Florimonte] to consider the possibility of bias in the rulings affecting the admissibility of her evidence for this trial." (*Id.* at ¶ 28). In her post-trial brief, Florimonte demands "a change of venue, preferably a removal to federal court where she may pursue the Hate Crimes issues" that she has raised in her latest submissions. (Docket entry no. 55 at p.2).

To properly address Florimonte's apparent effort to disqualify the entire Lackawanna County bench, it is necessary to briefly review her nine earlier lawsuits that

were dismissed by four other judges. On March 4, 2003, Florimonte commenced an action against the Borough of Dalton seeking injunctive relief and monetary damages based upon water damage to her property that was allegedly caused by the Borough's storm water drainage system that ostensibly distributed an excess volume of storm water onto her property. (*See Florimonte v. Borough of Dalton* ("*Florimonte I*"), No. 03 CV 60011, Docket entry no. 1 at p. 3-4). Florimonte's counsel in that case filed a petition to withdraw as counsel due to irreconcilable differences with Florimonte, and was ultimately granted leave of court to withdraw as her counsel. (*Id.* at nos. 31-32). Florimonte proceeded pro se in *Florimonte I*, and a non-jury trial was conducted before Judge Mazzoni on August 10, 2011. (*Id.* at no. 80).

In his comprehensive non-jury decision, Judge Mazzoni noted that the trial transcript "reveal[ed] that [Florimonte's] presentation of evidence was convoluted at best." *Florimonte v. Borough of Dalton* ("*Florimonte I*), No. 03 CV 60011, Mazzoni, J., at p. 10 (Lacka. Co. Dec. 28, 2011). For example, when questioning witnesses, Florimonte "frequently interjected her own testimony in the process of eliciting answers to questions," and "inappropriately read excerpts of transcripts of previous proceedings without proposing a question to the witness" or "establishing a legal foundation to do so." *Id.* Finding that Florimonte "introduced into this case causes of action which are not pled, recitation of allegations that are not borne out in the record, and references to testimony in previous proceedings which did not find their way into the trial record," Judge Mazzoni concluded that Florimonte

"failed to meet her burden" with respect to her claims. *Id.* at p. 14. Thus, he entered a non-jury verdict in favor of the Borough of Dalton. *Id.* at p. 15. After judgment was entered in that case on April 25, 2012, Florimonte appealed that decision to the Commonwealth Court of Pennsylvania, (Docket entry nos. 93-94), and that appeal was submitted for a decision on briefs on October 26, 2012. See *Florimonte v. Borough of Dalton*, No. 987 CD 2012 at docket entry no. 16 (Pa. Cmwlth.).

On August 25, 2010, Florimonte filed a second suit against the Borough of Dalton seeking to recover damages for personal injury, emotional distress and "financial distress/hardship" supposedly caused by the same storm water drainage system. (See *Florimonte v. Borough of Dalton* ("*Florimonte II*"), No. 10 CV 591 at docket entry no. 1 (Lacka. Co.)). The Borough of Dalton filed preliminary objections pursuant to Pa.R.C.P. 1028(a)(6) requesting the dismissal of *Florimonte II* due to the pendency of a prior action (i.e., *Florimonte I*). On January 18, 2011, Judge Carmen D. Minora sustained those preliminary objections and dismissed *Florimonte II* based upon the doctrine of lis pendens. See *Florimonte v. Borough of Dalton*, 2011 WL 9819966 (Lacka. Co. Jan. 18, 2011). On February 4, 2011, Florimonte filed a "petition to reverse and rescind" the dismissal order of January 18, 2011, and to "issue a default judgment" in Florimonte's favor, but that petition was denied by Judge Minora on June 24, 2011. See *Florimonte v. Borough of Dalton*, No. 10 CV 5981, Minora, J., at p. 3 (Lacka. Co. June 24, 2011).

Florimonte appealed the dismissal of *Florimonte II*, and on January 27, 2012, the Commonwealth Court

of Pennsylvania affirmed that dismissal. *Florimonte v. Borough of Dalton*, 37 A.3d 84 (Pa. Cmwlth. 2012). Florimonte filed a petition for allowance of appeal with the Supreme Court of Pennsylvania, but on July 3, 2012, the Supreme Court denied Florimonte's petition. *Florimonte v. Borough of Dalton*, 47 A.3d 849 (Pa. 2012). Florimonte filed a petition for writ of certiorari with the Supreme Court of the United States, which petition was denied on December 3, 2012. *Florimonte v. Borough of Dalton*, Pa. 133 S.Ct. 764 (U.S. 2012). Florimonte thereafter filed a petition for rehearing that was promptly denied by the Supreme Court of the United States on January 13, 2013. *Florimonte v. Borough of Dalton. Pa.,* 133 S.Ct. 974 (U.S. 2013).

On November 1, 2010, Florimonte filed a third lawsuit against the Borough of Dalton, this time alleging a "taking of private property by the Borough without just compensation" in contravention of the United States and Pennsylvania Constitutions. *Florimonte v. Borough of Dalton ("Florimonte III")*, No. 10 CV 7822, Mazzoni, J., at p. 2 (Lacka. Co. Nov. 9, 2011). Not unlike *Florimonte I* and *Florimonte II,* the claims set forth in *Florimonte III* were based upon allegations of the borough's "wrongful placement of a drainage system which allegedly channels excess quantities of water over and through [Florimonte's] property with resulting damages." *Id.* at p. 4. In holding that *Florimonte III* was barred by the doctrine of *lis pendens*, Judge Mazzoni sustained the Borough of Dalton's preliminary objections and dismissed *Florimonte III* on November 9, 2011. *Id.* at pp. 7-8.

Florimonte appealed the dismissal of *Florimonte*

*III* to the Commonwealth Court of Pennsylvania. *See Florimonte v. Borough of Dalton*, 51 A.3d 921 (Pa. Cmwlth. 2012). Florimonte asserted that Judge Mazzoni erred in dismissing her third lawsuit and "should have recused himself since he allegedly showed bias against Florimonte." *Florimonte v. Borough of Dalton*, No. 2273 CD 2011 at pp. 4-5 (Pa. Cmwlth. Sept. 18, 2012). The Commonwealth Court concluded that Judge Mazzoni appropriately dismissed *Florimonte III* based upon the doctrine of lis pendens. *Id.* at pp. 5-9. It further held that "a review of the transcript of the hearing before the trial court does not reveal bias on the part of the trial court." *Id.* at p. 10. Reasoning that Judge Mazzoni had properly "inquired as to the authority or relevance of a California decision regarding constitutional law to the current case," the Commonwealth Court observed "that Florimonte has filed approximately four complaints against the Borough relating to the drainage system on the property," and found that "[i]t wa[s] understandable the trial court judge inquired as to one of the dates involved and the nature of one of the other complaints relating to the drainage system." *Id.* Therefore, it held that there was no basis for Florimonte to request the recusal of Judge Mazzoni. *Id.* at pp. 10-11. Florimonte filed a petition for allowance of appeal, which the Supreme Court denied on March 28, 2013. *See Florimonte v. Borough of Dalton*, No. 823 MAL 2012 (Pa. Mar. 28, 2013).

Four days after Florimonte filed *Florimonte III*, she commenced a fourth action against the Borough of Dalton asserting "a personal injury claim which she attributes to the Defendant Borough's alleged wrongful diversion of

storm water over and through her property." *Florimonte v. Borough of Dalton* ("*Florimonte IV*"), No. 10 CV 801, Mazzoni, J., at p. 1 (Lacka. Co. Nov. 9, 2011). Once again, the Borough of Dalton sought to dismiss that suit based upon the doctrine of lis pendens, and Judge Mazzoni aptly stated that "[t]he resolution of this matter is not dependent upon the myriad of labels [Florimonte] places on her repetitive causes of action." *Id.* at p. 7. On November 9, 2011, Judge Mazzoni sustained the Borough's preliminary objections and dismissed *Florimonte IV. Id.* at p. 8. On December 7, 2011, Florimonte appealed that ruling to the Commonwealth Court of Pennsylvania, and on October 16, 2012, the Commonwealth Court affirmed Judge Mazzoni's dismissal of *Florimonte IV. Florimonte v. Borough of Dalton*, 54 A.3d 444 (Pa. Cmwlth. 2012).

As she had in *Florimonte III*, Florimonte alleged in *Florimonte IV* that Judge Mazzoni "abused his discretion by failing to recuse himself and displayed bias against her." *Florimonte v. Borough of Dalton*, No. 2323 CD 2011 at p. 5 (Pa. Cmwlth. Oct 16, 2012). The Commonwealth Court remarked that in *Florimonte III*, "...we dealt with nearly identical allegations of bias and denied relief on the basis that there was no request in the record that the trial judge recuse himself, and that a review of the transcript... revealed no bias on the part of the trial court." *Id.* at p. 6. Incorporating by reference its analysis and discussion in *Florimonte III*, the Court held that its "review of the transcript reveals no bias on the part of the trial judge." *Id.* Once again, Florimonte filed a petition for allowance of appeal that was denied on March 28, 2013, in *Florimonte v. Borough of Dalton*, No. 945 MAL 2012 (Pa. Mar. 28,

2013).

On January 18, 2011, Florimonte filed two additional law suits against William Salva and Lorraine Daniels who are both members of the Dalton Borough Council. *See Florimonte v. Salva ("Florimonte V")*, No. 11 CV 404 (Lacka. Co.); *Florimonte v. Daniels ("Florimonte VI")*, No. 11 CV 405 (Lacka. Co.). One week later, Florimonte sued two other council members, William Brandt and Aaron Holzman, in *Florimonte v. Brandt ("Florimonte VII")*, No. 11 CV 570 (Lacka. Co.) and *Florimonte v. Holzman ("Florimonte VIII")*, No. 11 CV 571 (Lacka. Co.). Those four actions represented the fifth, sixth, seventh and eighth suits filed "by [Florimonte] based upon one claim: that excessive amounts of water are being deposited onto her property and that the several defendants are at fault, either personally or in an official capacity." *Florimonte v. Salva, Daniels. Brandt and Holzman*, Nos. 11 CV 404, 405, 570 and 571, O'Brien, S.J., at p. 1 (Lacka. Co. June 6, 2012).

In each of those four cases, Florimonte made "bald, vague and unsubstantiated statements alleging conspiracies, violations of the Privileges and Immunities clauses of the Federal Constitution, and accuse[d] the defendants of trampling upon her civil rights, but never g[ave] details enough to give this court any idea as to how these alleged offenses have been committed, to say nothing of allowing the defendants to have sufficient information on which to prepare a defense." *Id.* at p. 4. Salva, Daniels, Brandt and Holzman presented preliminary objections to Florimonte's amended complaints in those cases, and their preliminary objections were assigned to visiting Senior Judge Peter J. O'Brien. "Because [Florimonte] ha[d] not

sufficiently pled her action pursuant to the Rules of this Commonwealth, despite being given the opportunity to file an amended complaint, and in light of the fact that this same body of facts has been the subject of so much litigation," Judge O'Brien sustained the preliminary objections and dismissed *Florimonte V, Florimonte VI, Florimonte VII and Florimonte VIII* with prejudice. *Id.* at pp. 4-5. Florimonte appealed Judge O'Brien's dismissal of those cases, and on December 21, 2012, all four appeals were submitted for a decision based upon the parties' briefs. *See Florimonte v. Salva,* No. 1305 CD 2012 at docket entry no. 15 (Pa. Cmwlth.); *Florimonte v. Daniels,* No. 1306 CV 2012 at docket entry no. 15 (Pa. Cmwlth.); *Florimonte v. Brandt,* No. 1307 CD 2012 at docket entry no. 15 (Pa. Cmwlth.); *Florimonte v. Holzman,* No. 1308 CD 2012 at docket entry no. 15 (Pa. Cmwlth.).

Last, on December 24, 2011, Florimonte filed another action against Salva, Daniels, Brandt, Holzman, as well as other members of Dalton Borough Council, seeking mandamus relief, compensatory damages and "punitive damages in excess of $1,000,000.00" for harm allegedly caused to Florimonte's "property and her well-being" by water run-off from the storm water drainage system. *Florimonte v. Council of Borough of Dalton et al. ("Florimonte IX"),* No. 11 CV 7601, Thomson, S. J., at pp. 1-2 (Lacka, Co. Aug. 16, 2012). The council members filed preliminary objections based upon the doctrine of lis pendens, and those preliminary objections were assigned to visiting Senior Judge Harold A. Thomson. Inasmuch as the parties, rights asserted, and relief sought in *Florimonte IX* were identical to the parties, rights asserted and relief

requested in Florimonte's earlier suits, Judge Thomson sustained the preliminary objections and dismissed *Florimonte IX* with prejudice on August 16, 2012. *Id.* at p. 5. On September 17, 2012, Florimonte appealed that dismissal to the Commonwealth Court, and on February 1, 2013, that appeal was submitted for a decision based upon the parties' briefs. *Florimonte v. Council of Borough of Dalton et al.* No. 1786 CD 2012 at docket entry no. 9 (Pa. Cmwlth.)

As the foregoing chronology reflects, Florimonte has had nine pro se lawsuits dismissed by four Lackawanna County judges, two who are elected Lackawanna County jurists and two who presided in this county by designation. Based upon the fact that the undersigned's chambers are situated "directly across the hall" from Judge Mazzoni's office, Florimonte asserts that a post-trial "change of venue" is warranted due to a transferred "possibility of bias" from Judge Mazzoni to the undersigned. Florimonte fails to cite a single case or rule in support of her novel requested relief.

"In order to preserve an issue for review, litigants must make timely and specific objections during trial and raise the issue in post-trial motions." *Corrado v. Thomas Jefferson University Hosp.,* 790 A.2d 1022, 1034 (Pa. Super. 2001). Pursuant to Pennsylvania Rule of Civil Procedure No. 1006(d)(2), a court may transfer an action to another county to be designated by the Supreme Court if, "upon petition and hearing thereon, the court finds that a fair and impartial trial cannot be held in the county for reasons stated of record...." Pa.R.C.P. 1006(d)(2). Although the party seeking such a change of venue is not required

to raise that issue at the preliminary objection stage, *see Zappala v. Brandolini Property Management, Inc.*, 589 Pa. 516, 537, 909 A.2d 1272, 1284 (2006), [s]he waives the right to request such a change of venue if [s]he fails to seek it prior to trial. *See Com. v. Baumhammers*, 599 Pa. 1, 25-26, 960 A.2d 59, 74-75 (2008), *cert. denied*, 130 S.Ct. 204 (U.S. 2009). Since Florimonte did not demand a change of venue prior to or during trial, and instead first sought that relief after the jury had already returned a verdict against her, she waived her ability to obtain a change of venue under Rule 1006(d)(2).

Assuming for the sake of argument that Florimonte had properly preserved that issue, her request for a change of venue would have been denied as frivolous. Florimonte bases her post-trial demand for a change of venue upon "her perceived bias by Judge Robert Mazzoni." In *Florimonte III* and *Florimonte IV*, the Commonwealth Court concluded that the trial transcripts failed to reveal any supposed bias on the part of Judge Mazzoni. *See also Com. v. Birdsong*, 611 Pa. 203, 223, 24 A.3d 319, 331(2011) (mere adverse rulings do not establish the requisite bias for recusal of a judge). The court records confirm that Judge Mazzoni decided Florimonte's cases on their merits, or lack thereof, and his impartial and unbiased rulings have been affirmed on appeal.

Furthermore, even if such a purported bias had been demonstrated in Florimonte's earlier suits and appeals, there is no authority for imputing that bias to another judge based upon the proximity of that judge's chambers to the other judge's office. Prior to Florimonte's filing of her post-trial "motion for change of venue," the

undersigned was unaware of Judge Mazzoni's disposition of *Florimonte I, Florimonte III* and *Florimonte IV,* Florimonte's correspondence to the Pennsylvania Court Administrator seeking a "change of venue" in her cases that were assigned to Judge Mazzoni, or her claims of judicial bias that were rejected by the Commonwealth Court in *Florimonte III* and *Florimonte IV.* Accordingly, there is absolutely no legitimate basis in law or in fact for a post-trial "change of venue away from the bench of the civil court of Lackawanna County" based upon unfounded claims of transferred judicial bias. An appropriate order follows.[3]

### ORDER

And now, April 4, 2013, upon consideration of defendant's "motion for post-trial relief," the memoranda of law submitted by the parties, and the oral argument on February 28, 2013, and based upon the reasoning set forth in the foregoing memorandum, it is hereby ordered and decreed that:

1. Defendant's motion for post-trial relief pursuant to Pa.R.C.P. 227.1(a)(1) is denied; and

2. The clerk of judicial records is directed to enter judgment in favor of plaintiffs, Scranton Laminated Label, Inc., d/b/a Scranton Label, Inc., and Edmund J. Carr, and

---

3. Although Florimonte did not object to the jury instructions at the time of trial or in her post-trial motion, she contends in her post-trial brief that "during deliberations, the jury asked for a definition of probable cause and...the judge gave the same definition as his instructions to the jury." (Docket entry no. 55 at p. 5). The trial transcript reflects that the jury never submitted a question or requested an instruction after it retired to begin its deliberations, but before it returned a verdict. (T.P. 11/28/12 at p. 108)

against defendant, Carolyn J. Florimonte, in the amount of $45,000.00.