Cris N. SMITH and Mabel
G. Smith, Appellants

v.

Gerald K. MORRISON, Esquire and
Scott W. Morrison, Esquire.

Superior Court of Pennsylvania.

Argued March 13, 2012.
Filed May 23, 2012.

Richard G. Angino, Harrisburg, for appellants.

Charles W. Craven, Philadelphia, for appellees.

BEFORE: STEVENS, P.J., PANELLA, J., and MUNDY, J.

OPINION BY PANELLA, J.

Appellant, Mabel G. Smith,[1] appeals from the judgment entered on March 14, 2011, in favor of Appellees, Gerald K. Morrison, Esquire and Scott W. Morrison, Esquire, by the Honorable Edward E. Guido, Court of Common Pleas of Perry County. We affirm.

The trial court summarized the pertinent facts as follows:

Plaintiff Mabel Smith and her husband Dick had two sons, Richard and Cris, born 18 years apart. They also had two farms, the upper farm and the lower farm. The entire family, including Richard's wife and their son, lived together on the lower farm until Cris was eleven years old. At that time Dick, Mabel, and Cris moved to the upper farm while Richard and his family remained on the lower farm.

Dick was a strong willed man. While he and Mabel owned both farms, she always deferred to his wishes when it came to business decisions. In 1985, about ten years after they moved to the upper farm, they sold the lower farm to Richard. He paid $130,000 for the 85 acre farm with livestock and equipment. About 5 years later they added Cris to the deed on the upper farm which contained almost 250 acres. Dick and Mabel owned an undivided one half interest and Cris owned the other undivided one half interest. At the same time the parents prepared codicils to their wills. The codicils required Cris to pay $80,000 to the estate of the last to die for their interest in the upper farm.

Dick died in 2003. Mabel became the sole owner of a one half interest in the upper farm by operation of law. Within a week Richard called a meeting with Mabel and Cris to question the arrangement with regard to the upper farm. He protested that $80,000 was not nearly enough to pay for a farm he felt was worth $1 million.

Mabel was upset by the conflict between her sons. While she wanted to do what was "fair", the boys had very different ideas as to what that was. She decided to contact a lawyer. In February of 2004 she had her son Richard take her to see her niece's husband, defendant Gerald Morrison. She told Mr. Morrison that she wanted to transfer her one half interest in the upper farm to Richard. She also wanted to change her will by revoking the codicil and dividing her estate equally between the boys.

[Attorney Morrison] attempted to discourage [Mabel] from transferring her interest in the property. He further advised that if she insisted on doing so she should at least have Richard sign a demand note for $100,000 in case she ever needed the money.

Mabel made a second appointment in May 2004 to which she brought both sons. She was convinced that transferring her interest to Richard was the fair thing to do. She was hopeful that [Attorney Morrison] could smooth things over between her boys. That was not to be. The meeting ended in a shouting match between the brothers.

Over the next 2½ years Mabel had several contacts with [Attorney Morrison]. ON July 1, 2004 she instructed him to prepare the deed, will and promissory note they had previously discussed. On July 12, 2004 the documents were ready to be executed. [Mabel]

---

1. The trial court dismissed Plaintiff, Cris N. Smith, as a party to the instant suit prior to the start of trial.

executed only the will at that time. She decided to take some additional time to think about the deed. She did, however, tell [Attorney Morrison] to forget about the demand note.

About a year later, in September 2005, Mabel had [Attorney Morrison] change her will. The revised will had her share of the upper farm go to Cris for $80,000. It also provided for Richard to receive that $80,000 payment as a specific bequest. In October 2006 she returned to [Attorney Morrison's] office. This time she executed the deed to Richard which had been prepared more than two years earlier. She further instructed [Attorney Morrison] to change her will yet again to divide the remainder of her estate evenly between her sons.

At all times [Mabel] was living with her son Cris. She did not tell him about any of the meetings with [Attorney Morrison] except for the one he attended. Furthermore, she did not inform him that she had executed the deed in favor of Richard. He did not find out until the day before the real estate tax bills were set to arrive the following February.

The very next day Cris filed suit to have the deed rescinded. Eventually he persuaded his mother to join that action. The Honorable Edgar Bayley, specially presiding, found that Richard used undue influence to procure the deed. Therefore, he granted the request for rescission.

Trial Court Opinion, 9/2/11 at 1–4.

Several years thereafter, Mabel and Cris filed the instant professional negligence action against Appellees, Attorneys Gerald and Scott Morrison. In their Second Amended Complaint, Appellants argued, *inter alia,* that the Morrisons breached their fiduciary duties to Smith when, following the death of her husband,

they allegedly undertook the simultaneous representation of her and her son Richard, when their interests were directly adverse. Following a jury trial, the jury returned a verdict in favor of the Morrisons. Thereafter, Smith filed timely motions for post-trial relief, which the trial court denied on March 8, 2011. This timely appeal followed.

On appeal, Smith raises the following issues for our review:

A. Did the trial judge commit an error of law and/or abuse his discretion when he refused to instruct the jury as to conflicts of law by giving [Smith's] suggested jury instructions 2, 5, 6, 7, and 8 or similar conflict of law instructions pertaining to an attorney's fiduciary duty to decline a case involving real or potential conflict of interests?

B. Did the trial judge commit an error of law and/or abuse his discretion when he permitted, over [Smith's] counsel's objections, the cross-examination of [Cris Smith] as to irrelevant, highly inflammatory, and prejudicial matters concerning his treatment of his mother and the transfer of her property interests; his threats to his mother, prior counsel, and Gerald Morrison; and the details of a telephone call he made to Judge Bayley's House?

Appellant's Brief, at 4.

■ In her first issue on appeal, Smith argues that the trial court erroneously refused to issue her proposed jury instructions 2, 5, 6, 7 and 8. Our standard of review is as follows:

Under Pennsylvania law, our standard of review when considering the adequacy of jury instructions in a civil case is to determine whether the trial court committed a clear abuse of discretion or

error of law controlling the outcome of the case. It is only when the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue that error in a charge will be found to be a sufficient basis for the award of a new trial. *Patton v. Worthington Associates, Inc.*, 43 A.3d 479, 490 (Pa.Super.2012) (citation omitted). "Further, a trial judge has wide latitude in his or her choice of language when charging a jury, provided always that the court fully and adequately conveys the applicable law." *Id.* (citation omitted).

The Pennsylvania Supreme Court adopted the Rules of Professional Conduct and the Rules of Disciplinary Enforcement in order to exercise its exclusive constitutional authority to regulate and supervise the conduct of the attorneys who are its officers. *In re Adoption of M.M.H.*, 981 A.2d 261, 272 (Pa.Super.2009). "[T]he Supreme Court has held that the Rules of Professional Conduct do not have the effect of substantive law but, instead, are to be employed in disciplinary proceedings." *Id.* (citation omitted). The Preamble to the Rules state that:

> Failure to comply with an obligation or prohibition imposed by a Rule is a basis for invoking the disciplinary process ... ***Violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide a structure for regulating conduct though disciplinary agencies. They are not designed to be a basis for civil liability.*** Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, it does not im-

ply that an antagonist in a collateral proceeding or transaction has standing to enforce the Rule. Accordingly, ***nothing in the Rules should be deemed to augment any substantive legal duty of lawyers*** or the extra-disciplinary consequences of violating such a duty.

Pa.R.P.C., Preamble (emphasis added).

■ Herein, Smith readily admits that the contested Proposed Jury Instructions were taken verbatim from the Pennsylvania Rules of Professional Conduct governing fiduciary duties applied to the attorney-client relationship. Appellant's Brief, at 11. She argues, however, that the trial court failed to "instruct the jury as to an attorney's fiduciary duty not to engage in actual or potential conflicts of interest, as has been unequivocally established by the common law," or as to an attorney's fiduciary duty to decline representation. *Id.* at 10.

In ultimately ruling that the Rules of Professional Conduct add no independent cause of action and thus could not be the basis of Smith's proposed jury instructions, the trial court instructed Smith's attorney as follows:

> The fiduciary duty comes from the common law. That's where your cause of action is based, not only the Rules of Professional Conduct....
>
> If you can have one of your associates or yourself find me any case where the Courts have allowed the admission or reference to the Rules of Professional Conduct, I'll allow it to come in. Otherwise, I will not, because there's nothing clear on that.

N.T., Jury Trial, 12/6/10 at 95. Smith's attorney replied that he'd "have somebody look at it. If not, we'll bring it in through the common law." *Id.* at 97. The record is devoid of any indication that Smith's attorney produced any precedent for the

introduction of the Rules of Professional Conduct as points for jury instruction.

At trial, the trial court instructed the jury on the concepts of fiduciary duty and professional negligence as follows:

Now, something I will point out to you. You've heard a lot of discussion in this case regarding a fiduciary duty. It is elementary in the legal profession that when an attorney enters into an attorney-client relationship the attorney has a fiduciary duty towards the client.

A fiduciary duty means simply one thing. The attorney must act in good faith and solely for the benefit of the client in the matter for which he was employed That's what we mean by fiduciary duty. Failure of the lawyer to conform to that fiduciary duty amounts to professional negligence.

If you find the Defendant was negligent in failing to use the skill, knowledge and judgment that is usually used in such circumstances by members in good standing in the legal community, you must then decide whether the Defendant's negligence was a factual cause of the Plaintiff's injuries. In order for the negligent conduct to be a factual cause, you must find that but for the Defendant attorney's negligent conduct the Plaintiff would not have sustained the damages claimed.

If you find the attorney-client relationship existed but the Defendant attorney was negligent and that harm was suffered, you must then award the Plaintiff an amount sufficient to compensate her for any financial injury she sustained as a result of that negligence. It is for you to determine the amount of actual loss the Plaintiff sustained as a result of the Defendant's negligence.

So, those are the elements of the cause of action: attorney-client relationship, meaning the employment; negli-gence by the Defendant, which would include failure to conform to the fiduciary duty, meaning acting in good faith and solely for the benefit of Mabel Smith in the deed transaction; that the negligence was a factual cause in bringing about harm; and the extent of damages or actual loss suffered by the Plaintiff. Those four things the burden is on the Plaintiff to prove.

N.T., Jury Trial, 12/9/10, at 591–593. At the close of the court's instructions, trial court asked whether counsel had "any additions or corrections other than the prior objections that were made?" *Id.* at 601–602. Smith's attorney replied, "I'm satisfied for the Plaintiff." *Id.* at 602.

Based on the foregoing, we find that Smith has failed to clearly establish how the trial court erred when it rejected her proposed jury instructions. As previously noted, the contested jury instructions refer to and quote at length the Pennsylvania Rules of Professional Conduct. When the trial court granted Smith the opportunity to support the points for the contested proposed jury instructions through the common law, she failed to do so. Smith's belated attempts to now provide case law to support her proposed instructions on appeal cannot save her argument, as these arguments were not raised or considered in the court below.

More importantly, Smith has not provided precedent binding on this Court to support her argument that the Rules of Professional Conduct constitute valid points for jury instructions independent of common law. As discussed earlier, the Preamble to the Rules and established case law unequivocally state that *"nothing in the Rules should be deemed to augment any substantive legal duty of lawyers"*; nor are they designed to be the basis of civil liability. Pa.R.P.C., Preamble (emphasis added). *See also, In re the Adoption of*

*M.M.H., supra.* In light of this clear pronouncement, we find no error in the trial court's refusal to issue the Proposed Jury Instructions 2, 5, 6, 7 and 8, which rely exclusively upon the ethical Rules to establish a basis for fiduciary duty. Accordingly, Smith's first issue on appeal is without merit.

■ In her second issue on appeal, Smith argues that the trial court abused its discretion when it permitted defense counsel to question Cris Smith on cross-examination regarding his treatment of his mother, Mabel, the transfer of her property interests to Cris, his threatening statements to his mother and counsel, and a telephone call to Judge Bayley's house during the underlying rescission action. Appellant's Brief, at 40. We note that

> the admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact. Evidence, even if relevant, may be excluded if its probative value is outweighed by the potential prejudice.

*Commonwealth v. Fransen,* 42 A.3d 1100, 1106 (Pa.Super.2012) (internal citations omitted). " 'Unfair prejudice' supporting exclusion of relevant evidence means a tendency to suggest decision on an improper basis or divert the jury's attention away from its duty of weighing the evidence impartially." *Commonwealth v. Wright,* 599 Pa. 270, 325, 961 A.2d 119, 151 (2008). "The function of the trial court is to balance the alleged prejudicial effect of the evidence against its probative value and it

is not for an appellate court to usurp that function." *Commonwealth v. Parker,* 882 A.2d 488, 492 (Pa.Super.2005), *affirmed on other grounds,* 591 Pa. 526, 919 A.2d 943 (2007). The law "does not require a court to sanitize a trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged." *Commonwealth v. Page,* 965 A.2d 1212, 1220 (Pa.Super.2009), (citing *Commonwealth v. Dillon,* 592 Pa. 351, 366, 925 A.2d 131, 141 (2007)).

Here, Smith alleges that "[n]one of this evidence is relevant, probative, or material, but certainly, all of it is unduly prejudicial." Appellant's Brief, at 51. However, although Smith cites the contested testimony at length and provides applicable case law, *see* Appellant's Brief at 40–51, she altogether fails to explain in what way the testimony was either irrelevant or prejudicial, or provide any argument thereon. Accordingly, we cannot find that the evidence was so prejudicial as to divert the jury's attention away from its duty of weighing the evidence impartially.

Judgment affirmed.