J-A28031-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ESTATE OF ASHLYN V. WILLIAMS, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: ROBERT HAWKINS AND ASHLYN V. SAUNDERS-HAWKINS, III | No. 165 EDA 2013 |

Appeal from the Order entered December 11, 2012,
in the Court of Common Pleas of Philadelphia County, Orphans'
Court, at No(s): 372 AP of 2010

BEFORE:    GANTMAN, WECHT, and JENKINS, JJ.

MEMORANDUM BY JENKINS, J.:                    **FILED NOVEMBER 17, 2014**

Appellants Robert Hawkins ("Robert") and Ashlyn V. Saunders-Hawkins, III ("Ashlyn") (collectively "Appellants") appeal *pro se* from the December 11, 2012 order of the Court of Common Pleas of Philadelphia County, Orphans' Court Division, denying their request for damages as averred in their Emergency Motion for Extraordinary Relief. After careful review, we affirm.

This matter is the continuation of a protracted underlying dispute between Roxanne Lloyd ("Roxanne") and Appellants. Ashlyn is Roxanne's sister, and Robert is Ashlyn's husband and Roxanne's brother-in-law. While the underlying matter involves multiple claims of wrongdoing in the probate of Ashlyn and Roxanne's mother's will, the instant appeal involves only the value of personal property Ashlyn claims she left in real property granted to Roxanne by their mother's will.

We summarize the factual and procedural histories of the matter as follows. Ashlyn Williams ("Decedent"), Roxanne's and Ashlyn's mother, passed away on May 30, 2009. Decedent's will, executed on May 12, 2009, left her entire estate to Roxanne and appointed Roxanne as executrix. When Decedent died, the Estate consisted of no personal property but three pieces of real property in West Philadelphia, two of which were contiguous.[1] Ashlyn resided in the contiguous properties.[2]

In February 2010, Roxanne offered the May 12, 2009 will for probate with the Philadelphia County Register of Wills. On February 25, 2010, the Register of Wills admitted the will to probate and granted Roxanne letters testamentary. Ashlyn unsuccessfully challenged the probate of the will.[3]

---

[1] 1217 Greylock Street, 600 South 51st Street, and 602 South 51st Street.

[2] 600-602 South 51st Street.

[3] Ashlyn filed an appeal from the decree of probate and a "Petition To Revoke The Grant Of Letters Of Administration, And For An Accounting Of All Activity Related To The Estate" ("Petition to Revoke") on March 8, 2010. The Petition to Revoke alleged Decedent lacked testamentary capacity to execute the will, and that the will was procured through undue influence exerted by Roxanne. The trial court conducted a hearing on these claims on April 28, 2011, and denied Ashlyn's claims by decree filed on June 7, 2011. After filing exceptions that the lower court denied, Ashlyn appealed to this Court, which dismissed the appeal based on Ashlyn's complete failure to comply with the briefing/reproduced record requirements outlined in the Rules. **See Estate of Ashlyn V. Williams, Deceased, Appeal of: Ashlyn V. Saunders-Hawkins, III**, 2953 EDA 2011 (unpublished memorandum). The instant case is not, however, an appeal of the lower court's rulings regarding the validity of the will or the distributions thereunder. Instead, it is an appeal from a collateral ruling concerning personal property in one of the properties acquired by Roxanne under the terms of the will, as discussed **infra**.

Meanwhile, the estate deeded the real property to Roxanne, and Roxanne began eviction proceedings against Ashlyn and the other occupants of the properties.[4] Following a hearing on May 12, 2010, the Philadelphia Municipal Court entered a judgment against Ashlyn and all occupants of 600-602 South 51st Street. Ashlyn was evicted from the premises on August 5, 2010.

Following the eviction, Ashlyn filed a Petition to Restore Possession, which the Municipal Court denied following a hearing on August 13, 2010.[5] The Municipal Court ordered Ashlyn to remove her property from the premises on August 14th and 15th, 2010, between the hours of 9 a.m. and 5 p.m.

On May 26, 2011, Ashlyn filed a motion entitled "Emergency Motion For Extraordinary Relief" ("Emergency Motion") alleging that Roxanne had violated the court's August 13, 2010 order that allowed Ashlyn to enter and take her personal possessions from 600-602 South 51st Streets following her eviction. The Emergency Motion alleged Roxanne had stolen all of Ashlyn's

_____

[4] Ashlyn filed a *pro se* petition for an injunction to prevent Roxanne from taking any action with regard to the premises, including selling, collecting rents, and/or evicting tenants. After a hearing, the Orphans' Court denied Ashlyn's request for an injunction on April 15, 2010.

[5] After the hearing on the Petition to Restore Possession, also on August 13, 2010, Roxanne obtained a temporary Protection From Abuse order against Ashlyn in the Family Court Division of the Philadelphia County Court of Common Pleas.

- 3 -

personal property contained within the property, including appliances, jewelry, heirlooms, furniture, clothing, and tools and equipment used in the conduct of her business. Roxanne did not file an answer to the Emergency Motion, and the trial court entered judgment against Roxanne on May 26, 2011.

On July 27, 2012, the Orphans' Court held a damages hearing on the judgment entered against Roxanne. At that hearing, Ashlyn claimed Roxanne stole appliances, machines, and tools that Ashlyn and Robert intended to use for a business. Ashlyn estimated the value of these missing items/tools/etc. at somewhere between $75,000 and $500,000 but provided no documentation, receipts, or other proofs to substantiate her estimate.

The court denied Ashlyn any damages by order dated December 11, 2012. The court later explained:

> Upon consideration of the Record made at the Hearing held on June 27, 2012, I found that Ashlyn was not a credible or convincing witness; that I could not make an award of damages, for loss of personal property, without engaging in sheer speculation, guesswork, and conjecture; and, that, under the circumstances in this case, the conduct of Roxanne was not outrageous.

1925(a) Opinion, p. 20. Appellants timely appealed.

Appellants raise the following claim for review:

> Did not the lower court err in refusing to hear any evidence of testimony regarding the state of New Jersey, considering the fact that the will was produced, procured, and initially probated in

- 4 -

the State of New Jersey, and it was unequivacally [sic] proven that Mrs. Lloyd perjured herself in her initial filing there?

Appellants' Brief, p. 2 (all caps removed, page number supplied). In essence, Appellants present a question regarding the trial court's determination as to the admission of certain evidence. They claim the court erred by failing to admit evidence regarding their allegations of Roxanne's wrongful effort to probate Decedent's will in New Jersey prior to probating it in Pennsylvania. They are incorrect.

"[T]he admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." *Smith v. Morrison*, 47 A.3d 131, 137 (Pa.Super.2012).

> Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact. Evidence, even if relevant, may be excluded if its probative value is outweighed by the potential prejudice.

*Id.*; *see also Commonwealth v. Minerd*, 752 A.2d 225, 230 (Pa.2000) ("Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact.").

Here, the sole issue at the damages hearing was to determine the value of the property Appellants claimed Roxanne stole. Any evidence regarding Roxanne's alleged misdeeds attempting to probate the will in New Jersey was completely irrelevant to the single damages issue before the court and was properly precluded as irrelevant. **See Smith**, **supra**.

In fact, Appellants put forth no evidence whatsoever to support their claims that Roxanne retained property valued at between $75,000 and $500,000. As the trial court explained:

> Ashlyn and Robert[] produced no receipts or appraisal[s] to support the values which they placed on their lost personal property. They made no insurance claims for their losses. I could only engage in sheer speculation, guesswork and conjecture to make an award of damages for the loss of tools and equipment which have been used in a business conducted by disabled persons who receive Social Security Disability Benefits but did not file income tax returns to report their receipts from the business. I could only engage in sheer speculation, guesswork and conjecture to make an award of damages for the loss of heirlooms, furniture, jewelry, appliances, clothing, shoes and other property lost by Ashlyn and Robert. I was not convinced by Ashlyn's testimony[6] as to [the] value [of

---

[6] The trial court assessed Ashlyn's testimony thusly:

Ashlyn was highly agitated, screaming, ranting and raving, in a manner bordering on hysteria, during much of her time on the witness stand at the [h]earing on June 27, 2012. As a finder of fact, I found Ashlyn was not a credible or convincing witness because her observations, recollections and testimony were clearly influenced by her palpable antipathy for Roxanne. Ashlyn sees Roxanne as a liar and a criminal who must be punished for victimizing Ashlyn. The testimony of Ashlyn's [d]aughter, as

(*footnote continued on following page*)

the property,] which was based on trips to Home Depot and a [j]ewelry [s]tore to gaze at the items on display.  I could only engage in sheer speculation, guesswork and conjecture to make an award of [d]amages for the loss of the ashes of Robert's mother.

Upon consideration of the [r]ecord made at the [h]earing held on June 27, 2012, I held that I could not make an award of damages, for loss of personal property, without engaging in sheer speculation, guesswork and conjecture.

1925(a) Opinion, pp. 22-23.

Simply put, Appellants failed to put forth any credible evidence to support their claims of loss at the damages hearing.  Any testimony about alleged misdeeds in prior New Jersey probate proceedings would not have changed this fact.  Accordingly, the trial court did not abuse its discretion by excluding this irrelevant evidence.

Order affirmed.


Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/17/2014

---

well as Ashlyn's own demeanor on the witness stand, convinced me that Ashlyn and Roxanne cannot be in the same room without some dispute erupting.

1925(a) Opinion, pp. 20-21.