Matthew A. Bomberger,               :
                    Petitioner      :
                                    :
          v.                        :
                                    :
Unemployment Compensation           :
Board of Review,                    :   No. 2420 C.D. 2014
                    Respondent      :   Submitted: July 24, 2015


BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
          HONORABLE MARY HANNAH LEAVITT, Judge
          HONORABLE ANNE E. COVEY, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                         FILED: September 29, 2015


Matthew A. Bomberger (Claimant)[1] petitions this Court for review of the Unemployment Compensation (UC) Board of Review's (UCBR) November 24, 2014 order affirming the Referee's decision finding Claimant ineligible for UC benefits under Section 402(e) of the UC Law (Law).[2]  Claimant essentially presents two issues for this Court's review: (1) whether the UCBR erred in determining that Claimant engaged in willful misconduct; and, (2) whether the UCBR erred by ruling that Claimant was not subjected to disparate treatment.  After review, we affirm.

Claimant was employed by Lancaster County (Employer) as an Assistant Public Defender from September 4, 2001 through July 14, 2014.  His duties included, *inter alia*, providing legal representation for adults and juveniles charged with

---

[1] Claimant, an attorney, represented himself throughout these proceedings.

[2] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e) (relating to discharge for willful misconduct).

criminal offenses. On July 14, 2014, after numerous prior warnings, Employer terminated Claimant's employment due to carelessness, substandard work and lack of cooperation/teamwork. Thereafter, Claimant applied for UC benefits.

On August 5, 2014, the Lancaster UC Service Center determined that Claimant was eligible for UC benefits under Section 402(e) of the Law. Employer appealed and a Referee hearing was held on September 4, 2014. By September 16, 2014 decision, the Referee reversed the UC Service Center's determination, holding that Claimant was ineligible for UC benefits under Section 402(e) of the Law due to his failure to follow Employer's work rules/policies. Claimant appealed to the UCBR. On November 24, 2014, the UCBR adopted and incorporated the Referee's findings and conclusions and affirmed the Referee's decision. Claimant appealed to this Court.[3] Employer intervened.[4]

Claimant argues that the UCBR erred in determining that he engaged in willful misconduct because the findings of fact were not supported by substantial evidence. We disagree. Section 402(e) of the Law provides that a claimant shall be ineligible for UC benefits for any week where "his unemployment is due to his discharge . . . from work for willful misconduct connected with his work[.]" 43 P.S. § 802(e). "The employer bears the initial burden of proving a claimant engaged in willful misconduct." *Ductmate Indus. v. Unemployment Comp. Bd. of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008). This Court has held:

> Though not defined in the Law, willful misconduct has been interpreted to include: (i) wanton and willful disregard of the employer's interests; (ii) a deliberate violation of the

---

[3] "Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704." *Turgeon v. Unemployment Comp. Bd. of Review*, 64 A.3d 729, 731 n.3 (Pa. Cmwlth. 2013).

[4] By June 29, 2015 letter, the UCBR notified this Court that it would not file a brief in this matter.

2

employer's rules; (iii) a disregard of the standards of behavior that the employer rightfully can expect from its employees; and (iv) negligence that manifests culpability, wrongful intent or evil design, or an intentional and substantial disregard of the employer's interests or the employee's duties and obligations.

*Oyetayo v. Unemployment Comp. Bd. of Review*, 110 A.3d 1117, 1121 (Pa. Cmwlth. 2015). "Whether a claimant's actions rise to the level of willful misconduct is a question of law fully reviewable on appeal." *Ductmate Indus.*, 949 A.2d at 342.

We note that mere incompetence, inexperience, or inability to perform a job generally will not support a finding of willful misconduct. However, it is well-established that **an employee's failure to work up to his or her full, proven ability, especially after multiple warnings regarding poor work performance, must be construed as willful misconduct** because such conduct demonstrates an intentional disregard of the employer's interest or the employee's obligations and duties.

*Scott v. Unemployment Comp. Bd. of Review*, 36 A.3d 643, 647-48 (Pa. Cmwlth. 2012) (citations omitted; emphasis added). "Once the employer meets its burden, a claimant may then prove he had good cause for his actions. Good cause is established where the action of the employee is justifiable or reasonable under the circumstances[.]" *Umedman v. Unemployment Comp. Bd. of Review*, 52 A.3d 558, 561 (Pa. Cmwlth. 2012) (quoting *Dep't of Corr. v. Unemployment Comp. Bd. of Review,* 943 A.2d 1011, 1015 (Pa. Cmwlth. 2008) (citation and quotation marks omitted)).

Here, Employer's Chief Public Defender James Karl (Karl) testified at the Referee hearing that the trial court schedules the criminal proceedings, and Karl schedules public defenders to cover blocks of those proceedings. Karl expounded that the individual public defenders also have assignments that they schedule themselves. Karl admitted that there are times when these schedules overlap or

3

conflict and, when that occurs, it is up to each of the attorneys to resolve them.[5] He stated: "It's not a perfect system, but it's the system the Court has forced on us. We're required to do our utmost to exist in it." Notes of Testimony, September 4, 2014 (N.T.) at 51. Karl also articulated that Employer has a general policy that the assistant public defenders are to "provide zealous advocacy" for their clients. N.T. at 19.

Karl described that Claimant had a history of carelessness and substandard work that typically involved scheduling and organizational problems for which Claimant received a verbal warning in August 2003, and written warnings in April 2007 and July 2008. Karl pronounced that Claimant received a fails-to-meet-expectations evaluation in September 2004 due to his scheduling and organizational difficulties and, although he eventually improved, his improvement lasted only a short time. Karl further recalled that Claimant was suspended for five days in August 2011 for offenses that included taking action contrary to a client's best interests.

Karl explained that Claimant received another written warning on April 8, 2014 for an April 3, 2014 carelessness and substandard work incident after a trial court judge complained that Claimant failed to appear at a guilty plea videoconference[6] and, after the judge's staff located him in another courtroom proceeding, Claimant admitted that he forgot. Karl further stated that Claimant was issued a verbal warning for scheduling and organizational problems and substandard courtroom advocacy on April 16, 2014 stemming from Claimant's failure to timely

---

[5] Karl related that the block schedules change rapidly because cases are pled or are postponed and are removed from the list, so they often do not take the full time allotted.

[6] Videoconferences are arranged for incarcerated individuals to make live pleas without being transported to the courtroom.

4

notify, in writing, non-incarcerated clients of their court appearances. Karl pronounced that Claimant did not appeal from any of these disciplinary actions.[7]

Regarding the most recent incidents leading to Claimant's discharge, Karl recounted that a block of Claimant's clients were scheduled for pretrial conferences on May 27, 2014 and, rather than mail advanced written notice to five non-incarcerated clients that they were to appear for the conferences, Claimant called them the morning of the conferences, and those who could not be reached failed to attend. Karl stated that because Claimant admitted to the trial judge that he failed to properly notify them, the trial judge did not issue bench warrants for the absent clients.

Karl also articulated that on June 20, 2014, Claimant's failure to zealously advocate for his client, J.W.,[8] led to a bench warrant being issued for her arrest. Karl testified that J.W. notified Claimant on June 18, 2014 that she could not attend a proceeding before Judge Totaro on June 20, 2014 because she had been subpoenaed to appear before District Judge Herman as a witness in another matter. Karl reported that Claimant received a fax from J.W. confirming the conflict, but nevertheless failed to notify Judge Totaro, and also allowed Judge Totaro to issue a bench warrant for J.W.'s failure to appear without explaining J.W.'s conflict. Karl recalled that Judge Totaro rejected Claimant's attempts to correct the situation later that day, and that Claimant advised J.W. to turn herself in. Karl noted that Judge Totaro vacated J.W.'s bench warrant after Employer's other staff intervened and explained the circumstances to Judge Totaro the following week. Karl stated that Claimant's response was that it was not his responsibility to resolve a client's scheduling conflicts.

---

[7] Claimant signed both his August 9, 2011 and April 8, 2014 Corrective Action Reports which reflected that consequences for his failure to improve was "[p]rogressive discipline up to termination." Certified Record Item 3 at 6, 13.

[8] J.W.'s initials are used to protect her identity in the interest of confidentiality.

Karl further described that although Claimant had five cases on the court's June 23, 2014 status conference list, he went on vacation from June 23 to 27, 2014 without making the necessary advanced arrangements to have the status conferences covered by other public defenders. Rather, Claimant emailed the judges (initially sending the emails to the wrong judges), and completely failed to contact one of the five clients who appeared in court and required another public defender's last-minute representation.[9]

According to Employer's Corrective Action Report regarding the May 27 to June 23, 2014 incidents that ultimately led to Claimant's discharge: "[Claimant] has not been able to conform his conduct over time to the expectations of [Employer]. This conduct has negatively affected the credibility and operations of the Public Defender's Office." Certified Record (C.R.) Item 3 at 4. Karl concluded that any one of these incidents supports Claimant's discharge, but the most serious was J.W.'s bench warrant incident.

Karl stated that of Employer's 23 public defenders, 17 of them have Claimant's same duties and time constraints. He specified that it is each attorney's responsibility "to send written notice by United States mail to his non-incarcerated clients[] who are required to appear [in court]," and also to resolve scheduling conflicts that occur. N.T. at 19; *see also* N.T. at 16. He articulated that the other attorneys find ways to deal with their scheduling demands. Karl asserted: "They resolve conflicts before they exist. They know where they're supposed to be when. [sic] They advise appropriate Court personnel of their need to be somewhere else, [and] try to coordinate things. In my 20-year history as Chief [Public Defender], I've

---

[9] Karl explained that when clients are added by the trial court at the last minute, Employer issues the client's notice. In this case, when the client attended the conference and Claimant did not, another public defender was required to take Claimant's place.

only written up one other person for a scheduling/organizational problem." N.T. at 52.

During the Referee hearing, Claimant spent a significant amount of time attempting to refute and/or justify the incidents leading to Employer's August 2003 to April 2014 disciplinary actions, but admitted that he had not appealed from any of them.[10] He claimed that it was Employer's common practice to send last-minute court appearance notices to clients. As an example, he explained that when he suffered a heart attack during his vacation on June 26, 2014, the attorneys who covered for him sent last-minute notices to his clients for their court appearances.[11]

Claimant asserted that his organizational difficulties were caused by Karl's dereliction in managing the public defenders' schedules.[12] Claimant contended that Karl's double-scheduling was unique to Claimant, and expounded:

> [W]hat I have been trying to get across is I'm so overscheduled. I'm placed in two and three courtrooms at a time in the afternoon. You cannot be in more than one place at one time. . . . [T]he week in question [June 18 to 20, 2014], I was in court in the morning and afternoon somewhere every day but Thursday morning [June 19, 2014]. And then I had to catch up everything else I had to do that morning. . . . Meanwhile, I'm trying to negotiate with DAs. I'm trying to . . . schedule with the Court . . . .

---

[10] Among other things, Claimant argued that he suffered post-traumatic stress disorder (PTSD) for which he was treated in August and September 2011. *See* N.T. at 74. The Referee sustained a relevance objection regarding Claimant's PTSD claim. *See* N.T. at 75.

[11] The Referee admitted certain records Claimant produced, but only to show Employer's attempt to cover for Claimant during his illness, not to prove that Employer commonly provided clients with last-minute court appearance notices. *See* N.T. at 65-66; *see also* Exs. C-6, C-7.

[12] Claimant related that he has filed several complaints against Karl about which Employer did nothing, and that Employer raised an ineffective assistance of counsel claim regarding him, which was resolved in his favor.

7

N.T. at 76-77. However, Claimant acknowledged that he understood that he was required to remedy schedule conflicts. Specifically, he stated that when he would notify Karl of such conflicts, Karl would tell him to "[f]ix it." *See* N.T. at 83.

Claimant admitted that he arrived late to a guilty plea on April 3, 2014, which was the basis for Employer's April 8, 2014 written warning and told the presiding judge that he had forgotten about it while he was attending another hearing, and the judge chose not to proceed. *See* N.T. at 68-69. Claimant asserted that his late arrival caused no harm since he arrived with approximately 10 minutes remaining for the videoconference, this client's plea had already been postponed numerous times, and the judge eventually accepted the guilty plea. Claimant also averred that he had pneumonia and swine flu the week of April 7, 2014.

Claimant alleged that his illness resulted in the April 16, 2014 late notice incident. He explained that he did not have someone else in the office cover for him because: "Well, I assume if I'm being double-scheduled[,] there isn't anyone in the office available; otherwise, they would have been scheduled for it." N.T. at 84. He articulated that he told the judge he tried to call his client to appear, but he couldn't reach her. When asked: "Why didn't you tell . . . the Judge that you hadn't provided written [notice?]," Claimant responded: "He didn't ask." N.T. at 85.

Regarding the June 20, 2014 matter, Claimant admitted that J.W. told him she was not available to appear in Judge Totaro's courtroom, and that she sent him the subpoena, but claimed that he did not see it, and when he attempted to contact her regarding her whereabouts, her daughter told him J.W. was on her way to court, which he thought meant Judge Totaro's courtroom. Claimant admitted that he did not tell Judge Totaro about J.W.'s conflict because he "momentarily forgot." N.T. at 79. Claimant maintained that when the misunderstanding was clarified, Judge Totaro agreed to see J.W. that afternoon, but J.W. did not have transportation to court. Claimant began his vacation the following Monday, June 23, 2014. He

8

reiterated that when J.W. appeared in court on June 23, 2014, Claimant's coworkers convinced Judge Totaro to vacate J.W.'s bench warrant.

Claimant recounted that he emailed the necessary parties regarding the June 23, 2014 status conferences, except for a last-minute client assigned to him on June 19, 2014 and who was designated pro se on Employer's list. He explained that he was in court all day on June 20, 2014, the day before his vacation, and since the client did not have to attend the status conference, notice should not have been a basis for disciplinary action against him.

The law is well established that:

> [T]he [UCBR] is the ultimate fact-finder in unemployment compensation matters and is empowered to resolve all conflicts in evidence, witness credibility, and weight accorded the evidence. It is irrelevant whether the record contains evidence to support findings other than those made by the fact-finder; the critical inquiry is whether there is evidence to support the findings actually made. Where substantial evidence supports the [UCBR's] findings, they are conclusive on appeal.

*Ductmate Indus.,* 949 A.2d at 342 (citations omitted). This Court has explained:

> Substantial evidence is relevant evidence upon which a reasonable mind could base a conclusion. In deciding whether there is substantial evidence to support the [UCBR's] findings, this Court must examine the testimony in the light most favorable to the prevailing party, in this case, the Employer, giving that party the benefit of any inferences which can logically and reasonably be drawn from the evidence.

*Sanders v. Unemployment Comp. Bd. of Review*, 739 A.2d 616, 618 (Pa. Cmwlth. 1999).

Based upon the facts presented in the instant matter, the UCBR adopted the Referee's findings, *inter alia*, that Claimant violated Employer's policies on timely contacting clients and managing schedules. The Referee specifically stated:

Claimant as an attorney for the Commonwealth was subject to the [R]ules of [P]rofessional [C]onduct, particularly [R]ules 1.3(1) and 1.3(2) regarding diligence,[13] and that [] Claimant was both instructed by [] Employer, and was well aware that he had a professional requirement to provide a zealous defense as an advocate for the clients, and to organize his work so that minimal risk would accrue to the clients.

Referee Dec. at 2. The Referee determined that Employer proved that Claimant was unable to perform his duties to Employer's standards despite repeated warnings and discipline and temporary improvements over several years, particularly regarding client notice and scheduling and organizational difficulties. Despite that Claimant was aware that he was to fix any scheduling conflicts that arose, and to timely notify

---

[13] Pennsylvania Rule of Professional Conduct (Pa.R.P.C.) 1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client." Pa.R.P.C. Rule 1.3. The Explanatory Comment states, in relevant part:

[1] A lawyer should pursue a matter on behalf of a client despite opposition, obstruction or personal inconvenience to the lawyer, and take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor. A lawyer must also act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf. . . .

[2] A lawyer's work load must be controlled so that each matter can be handled competently.

Pa.R.P.C. Rule 1.3 Explanatory Comment.
We acknowledge that "the Rules of Professional Conduct do not have the effect of substantive law but, instead, are to be employed in disciplinary proceedings." *Smith v. Morrison*, 47 A.3d 131, 135 (Pa. Super. 2012) (quoting *In re Adoption of M.M.H.*, 981 A.2d 261, 272 (Pa. Super. 2009)). Further, a Rule of Professional Conduct violation cannot create a presumption that a legal duty has been breached. *See* Pa.R.P.C. Preamble; *see also Smith*. However, as the Pennsylvania Supreme Court's method of "exercis[ing] its exclusive constitutional authority to regulate and supervise the conduct of the attorneys who are its officers[,]" the Referee in this case did not err in recognizing that Claimant was on notice by both Employer and the Rules of Professional Conduct of what was expected of him. *Smith*, 47 A.3d at 135. The Pennsylvania Superior Court has reasoned that although the trial court and the appellate courts lack authority to enforce the Rules of Professional Conduct, their import need not be ignored when directly relevant to another matter. *See Ignelzi v. Ogg, Cordes, Murphy and Ignelzi, LLP*, 78 A.3d 1111 (Pa. Super. 2013).

clients of court appearances, he failed repeatedly to do so which culminated in his July 14, 2014 discharge. The Referee discredited Claimant's testimony that he was overworked and overbooked or that his problems stemmed from medical conditions.

The Referee concluded that Claimant "was more than negligent, more than careless, and simply ignored the protocols of good lawyership." Referee Dec. at 2. The UCBR added: "[T]he [UCBR] finds and concludes that [Claimant] deliberately failed to follow [Employer's] policies. Further, the [UCBR] finds and concludes that [Claimant's] violations of [Employer's] policies were not commonplace and were not condoned by [Employer]. Finally, [Claimant] had no good cause for his actions." UCBR Order. Because there was substantial record evidence to support the UCBR's findings, the UCBR did not err by determining that Claimant engaged in willful misconduct and was ineligible for UC benefits under Section 402(e) of the Law.

Claimant also argues that the UCBR erred by failing to hold that Claimant was subjected to disparate treatment. We disagree.

> Disparate treatment is an affirmative defense by which a claimant who has engaged in willful misconduct may still receive benefits if he can make an initial showing that: (1) the employer discharged claimant, but did not discharge other employees who engaged in similar conduct; (2) the claimant was similarly situated to the other employees who were not discharged; and (3) the employer discharged the claimant based upon an improper criterion. Once the claimant has made this showing, the burden then shifts to the employer to show that it had a proper purpose for discharging the claimant. . . . '[T]he mere fact that one employee is discharged for willful misconduct and others are not discharged for the same conduct does not establish disparate treatment.' [*Am.*] *Racing* [*Equip.*], *Inc. v. Unemployment* [*Comp. Bd.*] *of Review, . . .* 601 A.2d 480, 483 ([Pa. Cmwlth.] 1991) (citing *Bays v. Unemployment* [*Comp. Bd.*] *of Review, . . .* 437 A.2d 72, 73 ([Pa. Cmwlth.] 1981)).

11

*Geisinger Health Plan v. Unemployment Comp. Bd. of Review*, 964 A.2d 970, 974-75 (Pa. Cmwlth. 2009) (citations and footnote omitted).

Here, Claimant provided no evidence that he was the only one of Employer's public defenders that experiences scheduling conflicts and/or fails to timely appear in court as a result. Further, the only evidence Claimant produced that Employer's other attorneys provide late notice to clients consisted of documentation that after his June 26, 2014 cardiac episode, Employer sent notices and attempted telephone and personal contact with his clients just days before their scheduled court appearances. Moreover, Claimant's testimony that "if I'm being double-scheduled[,] there isn't anyone in the office available; otherwise, they would have been scheduled for it[,]" belies his claim that he is the only public defender who experiences overscheduling. N.T. at 84.

Claimant did not make the required showing that Employer discharged him "but did not discharge other employees who engaged in similar conduct," that Claimant "was similarly situated to the other employees who were not discharged," or that Employer discharged Claimant "based upon an improper criterion." *Geisinger Health Plan*, 964 A.2d at 974. Under these circumstances, the UCBR did not err by failing to hold that Claimant was subjected to disparate treatment.

For all of the above reasons, the UCBR's order is affirmed.

_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Matthew A. Bomberger,        :
               Petitioner      :
                                 :
            v.               :
                                 :
Unemployment Compensation    :
Board of Review,               :     No. 2420 C.D. 2014
            Respondent    :

## O R D E R

AND NOW, this 29ᵗʰ day of September, 2015, the Unemployment Compensation Board of Review's November 24, 2014 order is affirmed.

_____
ANNE E. COVEY, Judge