J-S04010-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| HASSAN GRAVES | : | |
| | : | |
| Appellant | : | No. 512 EDA 2024 |

Appeal from the Judgment of Sentence Entered January 5, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004855-2022

BEFORE:  OLSON, J., STABILE, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                              **FILED APRIL 10, 2025**

Appellant, Hassan Graves, appeals from the January 5, 2024 judgment of sentence entered in the Court of Common Pleas of Philadelphia County after a jury convicted Appellant of manufacture, delivery, or possession with the intent to manufacture or deliver a controlled substance – marijuana and possession of a controlled substance – marijuana.[1]  Appellant was sentenced to 11 months and 15 days to 23 months' incarceration to be followed by 2 years' probation.  We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. §§ 780-113(a)(30) and (a)(16), respectively.  The jury found Appellant not guilty of manufacture, delivery, or possession with the intent to manufacture or deliver a controlled substance – cocaine and possession of a controlled substance – cocaine.  35 P.S. §§ 780-113(a)(30) and (a)(16), respectively.

The trial court summarized the factual history as follows:

On [] June 8, 2022, [at] 4:30 [p.m.], Philadelphia Police Department [] Officer Zachary Stout [("Officer Stout")] observed [Appellant] holding a red [convenience store] bag standing outside of a [] store located at [the corner of] Germantown Avenue and Butler Street in the City of Philadelphia[, Pennsylvania]. As [Appellant] was standing at that location, Officer Stout was setting up a plain-clothes narcotic[s] surveillance operation as the area is a high[-]crime area known for narcotics sales.[FN2] Officer Stout [] observed a heavyset black male approach [Appellant] and have a brief conversation. Following their conversation, [Officer Stout] saw [Appellant] exchange small, unknown objects for an indeterminable amount of United States currency.

> [Footnote 2:] Officer Stout was assigned to the 39th District of the [Philadelphia Police Department's] violent crimes reduction team. The team is deployed to areas for aggressive patrols in high-narcotics and gun violence areas.

As Officer Stout observed the transaction, he was in constant radio contact with his 39th District tactical band. He then [contacted] his backup [police] officers in the area, who were also in plain clothes and unmarked vehicles, [and relayed] the information of the transaction with the description of the buyer, later identified as Mr. Evans, and his direction of travel. Mr. Evans was stopped by [police officer Brendan Kelly ("Officer Kelly") and another police officer in] the 1500 block of Butler Street. Officer [Kelly] recovered two clear containers with purple lids containing a green leafy substance, [which was alleged to be] marijuana, from Mr. Evans. Officer [Kelly] issued Mr. Evans a citation and released him on location.

At approximately 5:10 [p.m.], a black male wearing a gray shirt and ripped blue pants, later identified as Mr. Borrell, approached [Appellant], who was now inside [] the store, [and] engag[ed Appellant] in a brief conversation. Following that conversation, another transaction occurred where [Appellant] exchanged [small, unknown objects for] United States currency[.] Mr. Borrell then left [the] location on foot and was stopped by [Officer Kelly and another police officer]. The [police] officers recovered one clear container with a purple lid that contained a green leafy substance,

[which was alleged to be] marijuana, from Mr. Borrell. He was issued a citation and released on location.

Officer Stout continued to observe [Appellant while] his backup [police] officers stopped the two buyers. Over the course of the observation, [Appellant] was mobile, standing in front of the store and walking up and down the street. At some point[,] an unidentified female met with [Appellant inside the store] next to two casino gambling machines[, which were located in the rear of the store]. Officer Stout observed the unidentified female [holding] the red [convenience store] bag [that was] previously [in the possession of Appellant]. Approximately 15 minutes later, Officer Stout instructed [the] backup [police] officers to arrest [Appellant. Several police officers, including Officer Stout and Officer Kelly] approached and eventually arrested [Appellant] inside [a] convenience store [that was located along] Germantown Avenue. Officer [Kelly] recovered the red [convenience store] bag which contained a black plastic bag[. The black plastic bag held] twenty-four clear vials with purple caps [containing what was] alleged [to be] marijuana and numerous pink heat-sealed Ziploc packets containing an off-white chunky substance, [which was] alleged [to be] crack cocaine. Officer [Kelly] also recovered from [Appellant's] person five additional clear containers with purple caps [containing what was alleged to be] marijuana[, as well as] three hundred and fifteen dollars [in United States currency.]

Trial Court Opinion, 5/31/24, at 1-3 (record citations and some footnotes omitted).

Appellant was charged with the aforementioned narcotics-related criminal offenses on June 8, 2022. On July 11, 2023, a jury convicted Appellant of manufacture, delivery, or possession with the intent to manufacture or deliver a controlled substance – marijuana and possession of a controlled substance – marijuana. On January 5, 2024, Appellant was sentenced to 11 months and 15 days to 23 months' incarceration to be followed by 2 years' probation for his conviction of manufacture, delivery, or

possession with the intent to manufacture or deliver a controlled substance – marijuana. The trial court imposed no further penalty for Appellant's conviction of possession of a controlled substance – marijuana. This appeal followed.[2]

Appellant raises the following issue for our review:

> Did the trial court abuse its discretion when it permitted the [Commonwealth] to elicit irrelevant and highly prejudicial testimony describing the character of the neighborhood and "typical" drug transactions?

Appellant's Brief at 4.

Relying on relevance and prejudice grounds, Appellant challenges the admissibility of evidence, a claim that we examine under a well-settled standard of review.

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court[,] and we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment[ but, rather, is] the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will[,] or partiality, as shown by the evidence of record. If[,] in reaching a conclusion[,] the trial court overrides or misapplies the law, discretion is then abused[,] and it is the duty of the appellate court to correct the error.

***Commonwealth v. LeClair***, 236 A.3d 71, 78 (Pa. Super. 2020) (citation omitted), *appeal denied*, 244 A.3d 1222 (Pa. 2021).

_____

[2] Both Appellant and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

"The threshold inquiry with admission of evidence is whether the evidence is relevant." ***Commonwealth v. Yale***, 249 A.3d 1001, 1022 (Pa. 2021) (citation omitted). "Evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence." ***Id.***, *citing* Pa.R.E. 401(a) and (b); ***see also Smith v. Morrison***, 47 A.3d 131, 137 (Pa. Super. 2012) (stating, "[e]vidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable[,] or supports a reasonable inference or presumption regarding a material fact" (citation omitted)), *appeal denied*, 57 A.3d 71 (Pa. 2012).

"Evidence, even if relevant, may be excluded if its probative value is outweighed by the potential prejudice." ***Morrison***, 47 A.3d at 137; ***see also Yale***, 249 A.3d at 1022 (stating, "[a]ll relevant evidence is admissible, except as otherwise provided by law" (*citing* Pa.R.E. 402)). "'Unfair prejudice' supporting exclusion of relevant evidence means a tendency to suggest decision on an improper basis or [to] divert the jury's attention away from its duty of weighing the evidence impartially." ***Morrison***, 47 A.3d at 137 (citation omitted).

At trial, Officer Stout testified that, at the time of his encounter with Appellant, he was a member of the violent crime reduction team for the Philadelphia Police Department's 39th District, which encompassed the area where the incident involving Appellant took place. N.T., 7/10/23, at 52. Officer Stout explained that the role of the specialized team was "targeted

patrols in high-crime areas that factor for gun violence and narcotic sales." *Id.* at 53. Officer Stout stated that he focused his specialized expertise on narcotic sales, but his focus on narcotic sales, inevitably, led to situations involving gun violence. *Id.*

Officer Stout testified that, prior to the incident involving Appellant, he conducted 30 to 40 narcotic sales surveillances where he served as the command officer responsible for observing targeted locations or individuals and directing the actions of backup police officers. *Id.* at 54. Officer Stout further stated that 15 of the 30 to 40 narcotics surveillances he previously conducted were in the 3700 block of Germantown Avenue where the incident involving Appellant occurred. *Id.* at 54-55. When asked, "what about this area [(referring to the 3700 block of Germantown Avenue)] would lead [him] to do 15 plain-clothes surveillances," the following exchange occurred:

[Officer Stout:]    So that area -

    [Appellant's Counsel:]    Objection to relevance again, Your Honor.

[Trial Court:]    Overruled.

[Officer Stout:]    That area encompasses Broad [Street] and Erie [Street, which] is a high-narcotics location[,] as well [as an area] that is traveled heavily on foot. That area right now is plagued pretty badly with narcotics sales and gun violence, to the fact that we have a uniform [police] officer sit there 24/7 on the corner and go on foot from Broad [Street] and Erie [Street] all the way up to Germantown [Avenue] and back.

That's all he[, or she,] does is walk back and forth all day.

*Id.* at 55-56.

In reviewing Appellant's claim involving Officer Stout's characterization of the neighborhood as being "a high-narcotics location" "plagued pretty badly with narcotics sales and gun violence," we consider, and are persuaded by, *Commonwealth v. Middleton*, 409 A.2d 41 (Pa. Super. 1978) and *Commonwealth v. Dalahan*, 396 A.2d 1340 (Pa. Super. 1979).[3] In *Middleton*, *supra*, several police officers were "requested to explain their presence" in an area of Philadelphia where the criminal incident involving Middleton occurred. *Id.* at 43. One of the police officers referred to the area as "high crime[.]" *Id.* The *Middleton* Court found that "[c]ertainly the testimony [describing the area as high crime] was irrelevant" but the Court declined to find that the testimony was so prejudicial as to warrant a new trial. *Id.* The Court reasoned that the police officer was "merely giving background as to why they had set up the [police surveillance] in a particular area and what experience told them was likely to happen." *Id.* The description of the area as a "high-crime area" was "merely stating the facts, it had no relationship to [Middleton]." *Id.* The *Middleton* Court found that "no reasonable inferences [could] be drawn that [Middleton] was somehow guilty merely because he was in a 'high[-]crime area.'" *Id.*

_____

[3] We agree with a recent panel of this Court that there are "[a] limited number of cases [that] address the relevance of an area being known for crime." *Commonwealth v. Murphy*, 311 A.3d 563, 2023 WL 8434799, at *9 (Pa. Super. filed Dec. 5, 2023) (unpublished memorandum) (emphasis omitted).

In **Dalahan**, **supra**, Dalahan was convicted of, *inter alia*, attempted burglary. **Dalahan**, 396 A.2d at 1341. The police officers testified that, at the time of Dalahan's arrest, the police officers "were on special assignment because of a rash of burglaries in the area." **Id.** at 1343. Dalahan argued that the police officers' testimony regarding the special assignment due to a "rash of burglaries" in the area was unduly prejudicial "because it suggested to the jury that [his] presence [in the area on the evening of his arrest] could be explained only by the fact that he must have been there to commit a burglary." **Id.** While the **Dalahan** Court found that the police officers' testimony was "somewhat irrelevant," the **Dalahan** Court held that it was not so prejudicial as to warrant a new trial. **Id.** The **Dalahan** Court explained that if Dalahan's argument was "drawn to its logical end, it would require all police officers to testify in plain clothes without reference to their occupation as police[ officers], since according to [Dalahan's] argument, if one is caught by a police[ officer], whose job it is to catch wrongdoers, then obviously he[, or she,] must be guilty of some wrongdoing." **Id.** The Court reasoned that "[t]he fact that the police[ officer testified that he was] on special duty to apprehend burglars and he arrest[ed Dalahan] who [was] subsequently charged with burglary, does not create a prejudicial inference with the jury that he is any more guilty than someone who is apprehended by a 'regular' police officer." **Id.** at 1343-1344. As such, the **Dalahan** Court held that the police officers' testimony regarding the special assignment in an area known

for relatively more frequent or increased levels of criminal activity was not so prejudicial as to warrant a new trial.

In the case *sub judice*, while we conclude that the trial court did not abuse its discretion in permitting Officer Stout to explain the police presence along Germantown Avenue and that such testimony was not so prejudicial as to warrant a new trial, we clarify that Officer Stout's characterization of the neighborhood as a "high-crime area" was not relevant in proving that Appellant committed an offense since the characterization of the neighborhood did not make Appellant's guilt more or less probable. *See* Pa.R.E. 401; *see also Yale*, 249 A.3d at 1022; *Morrison*, 47 A.3d at 137; *Middleton*, 409 A.2d at 43; *Dalahan*, 396 A.2d at 1343. Like the police officer in *Middleton*, Officer Stout merely provided background as to why the specialized team was conducting a narcotics surveillance operation in the area when the incident involving Appellant occurred. Officer Stout's background testimony is analogous to *res gestae* evidence in that Officer Stout merely offered admissible, concrete examples of the frequency of criminal activity in a particular area to explain why, based upon the criminal history of the area and not just its "reputation," the specialized team was present and conducting narcotics surveillance in the Germantown Avenue area when they observed Appellant.[4] Officer Stout's specialized team was tasked with targeting crimes

---

[4] *Res gestae* evidence furnishes "the complete story or context of events surrounding the crime." *Commonwealth v. Crispell*, 193 A.3d 919, 936 (Pa. 2018).

involving gun violence and narcotics, and it was because of the demonstrably higher frequency of criminal activity in the area that Officer Stout was present and engaged in surveillance operations when he observed Appellant.

Appellant's contention that Officer Stout's background testimony was so prejudicial that it warranted a new trial rests on the precarious premise that the Commonwealth solicited the testimony only to establish that all persons Officer Stout observed in the 3700 block of Germantown Avenue were guilty of a crime or that Appellant's mere presence in the area meant that he was guilty of a crime. But no reasonable inference regarding Appellant's guilt could be drawn from Appellant's mere presence in the area. Instead, under the circumstances, the challenged testimony was offered simply to explain the presence and ongoing nature of police activity in the area and did not tend to suggest a decision on an improper basis or divert the jury from impartially weighing the evidence directly related to Appellant's guilt. As such, Officer Stout's characterization of the area as a "high-crime area" was not so prejudicial as to warrant a new trial.[5] ***Middleton***, 409 A.2d at 43; ***see also Dalahan***, 396 A.2d at 1343-1344.

---

[5] To the extent Appellant asserts that the Commonwealth improperly referenced Officer Stout's characterization of the area in its closing argument (***see*** Appellant's Brief at 21), we find this issue to be waived. A review of the Commonwealth's closing argument demonstrates that Appellant did not lodge an objection to the statement made by the Commonwealth either contemporaneous with the statement or at the conclusion of the closing argument. ***See*** N.T., 7/10/23, at 152-164. Because Appellant failed to object to the Commonwealth's comments during its closing argument, he cannot now

Appellant further argues that the trial court erred in permitting Officer Stout to describe "what drug transactions typically look like." Appellant's Brief at 21. Appellant asserts that Officer Stout's testimony describing a "typical drug transaction" constituted expert testimony because it was based upon Officer Stout's specialized training and experience. *Id.* at 26. Appellant contends that Officer Stout was not admitted as an expert and, therefore, should not have been permitted to testify as to his opinion about a "typical drug transaction." *Id.* at 24, 26.

"The rule is well[-]settled that a party complaining, on appeal, of the admission of evidence in the [trial court] will be confined to the specific objection there made." ***Commonwealth v. Cousar***, 928 A.2d 1025, 1041 (Pa. 2007) (original brackets omitted), *cert. denied*, 553 U.S. 1035 (2008). "If counsel states the grounds for an objection, then all other unspecified grounds are waived and cannot be raised for the first time on appeal." ***Commonwealth v. Bedford***, 50 A.3d 707, 713 (Pa. Super. 2012) (*en banc*), *appeal denied*, 57 A.3d 65 (Pa. 2012).

A review of the trial transcript pertaining to Officer Stout's discussion of a "typical drug transaction" reveals the following dialogue:

[Commonwealth:]     Now, you mentioned earlier that you had the opportunity to conduct some 40 of

_____

raise the issue for the first time on appeal. Pa.R.A.P. 302(a) (stating, "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal"); ***see also Commonwealth v. Montalvo***, 956 A.2d 926, 936 (Pa. 2008) (reiterating that, "failure to object results in appellate waiver").

|                          |                                                                                                                                                               |
| ------------------------ | ------------------------------------------------------------------------------------------------------------------------------------------------------------- |
|                          | these plain-clothes surveillances by this time?                                                                                                                |
| [Officer Stout:]         | Correct.                                                                                                                                                       |
| [Commonwealth:]          | Did this hand-to-hand transaction look similar to anything else you've seen before?                                                                            |
| [Officer Stout:]         | Correct.                                                                                                                                                       |
| [Appellant's Counsel:]   | **Objection to relevance.**                                                                                                                                    |
| [Trial Court:]           | Overruled.                                                                                                                                                     |
| [Officer Stout:]         | Correct.                                                                                                                                                       |
| [Commonwealth:]          | Can you explain where you had seen this type of transaction before?                                                                                            |
| [Officer Stout:]         | So mostly in my experience, as a narcotics transaction takes place, closed fist or open palm, drop the objects in their hand, they close their hand and walk away after the exchange of money obviously. |

N.T., 7/10/23, at 61-62 (emphasis added).

Appellant raised an objection to Officer Stout's description of a "typical drug transaction" based on relevance. *Id.* at 62. On appeal, Appellant now asserts that Officer Stout's testimony constitutes an expert opinion offered by an individual who was not admitted by the trial court as an expert. Appellant's Brief at 21-26. Because Appellant failed to object on the grounds Officer Stout's description of a "typical drug transaction" constituted expert opinion

evidence by a non-expert, Appellant may not raise this challenge for the first time on appeal.[6]  Pa.R.A.P. 302(a); *see also Montalvo*, 956 A.2d at 936.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/10/2025

---

[6] Moreover, Officer Stout's testimony detailing his experience in recognizing drug transactions, *i.e.*, what he looks for and how he knows an interaction is likely a drug transaction, is exactly the type of testimony trial courts rely on, and require, in order to demonstrate a reasonable suspicion that the observed individuals are conducting a drug transaction.  *See Commonwealth v. Way*, 238 A.3d 515, 522 (Pa. Super. 2020); *see also Commonwealth v. Delvalle*, 74 A.3d 1081, 1086 (Pa. Super. 2013).  For this reason, we concur with the trial court that the testimony was relevant.